UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SWARM SHARING HASH FILE AE340D0560129AFEE8D78CE07F2394C7B5BC9C05; AND DOES 1 through 38,<br><br>    Defendants. | Civil Action No. 11-cv-10802-MBB |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S EMERGENCY EX-PARTE MOTION FOR EARLY DISCOVERY**

Plaintiff Liberty Media Holdings, LLC ("Liberty") seeks the identities of all Doe defendants from their respective Internet Service Providers ("ISPs"), and seeks a Court order directing the ISPs to disclose the subscriber's personally identifiable information. Unless early discovery is granted, however, information Liberty requires will be irrecoverably lost, beginning as early as May 13, 2011, as the ISPs will cease to retain the necessary user logs. Thus, Liberty respectfully requests that the Court grant the motion for early discovery.

The specific information being sought from each ISP is found on Exhibit A. Additionally, Liberty requests permission to propound limited discovery in the form of interrogatories and depositions on any individual identified by these ISPs in order to determine whether or not the actual Internet subscriber is a proper defendant in this action.

**FACTUAL BACKGROUND**

Liberty is a California limited liability company doing business as CORBIN FISHER®. Liberty produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, and other multimedia materials. Liberty operates and maintains a website by and through which individuals who pay a monthly subscription fee can view its photographic and audiovisual works.

Defendant Does 1–38 are individuals whose true names and addresses are unknown to Liberty. These Doe defendants duplicated and distributed unauthorized and infringing copies of Liberty's motion picture "Down on the Farm." Liberty has obtained the Internet Protocol ("IP") addresses assigned to the individual defendants, however, Liberty can only further identify the infringers by reference to subscriber information that is not publicly available. As such, Liberty intends to subpoena each defendant's respective ISP in order to determine the identity of the Internet subscriber who was assigned the corresponding IP address on the date and time of infringement.

The information Liberty seeks is time sensitive, as each ISP only retain the subscriber records for a limited period of time. For example, it is Comcast's stated policy that it only retains user logs for 180 days, and thus the information for Doe 1, a Comcast subscriber, will be irrecoverably lost May 13, 2011 unless Liberty is allowed to take discovery. *See* Ex. B, Comcast Law Enforcement Handbook, p.9 ("Comcast currently maintains its IP log files for a period of 180 days. If asked to make an identification based upon an IP address that was used more than 180 days prior to receipt of the request, Comcast will not have information to provide.").

The information which Liberty will be requesting in the subpoenas issued to the ISPs is, in some cases governed by the Cable Privacy Act, 47 U.S.C. § 551, which prohibits cable operators from disclosing personally identifiable information pertaining to subscribers without the subscriber's express consent unless there is "a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." 47 U.S.C. § 551(c)(2)(B).

Accordingly, Liberty requests that the Court issue the requisite Order instructing Charter Communications, Comcast Cable, Verizon Internet Services, and RCN Telecom Services, Inc. to produce any and all documents and/or information sufficient to identify the user or users of their respective IP addresses as listed in Exhibit 1 during the corresponding dates and times.

Additionally, Liberty requests permission to conduct early discovery on each user identified by these ISPs in order to determine (without further motions) whether the actual subscriber performed the acts complained of, or whether it was some other individual with access to the subscriber's Internet connection.

**ARGUMENT**

**I.     THE FEDERAL RULES ALLOW FOR EARLY DISCOVERY**

The Federal Rules of Civil Procedure allow for discovery prior to a Rule 26 conference upon a showing of good cause. *See London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 164 (D. Mass. 2008) (Gertner, J.). Liberty respectfully submits that it has met the good cause requirement due to the fact that there is no other way to identify the Doe defendants' outside of a subpoena to their respective ISPs, and that the necessary information will irrecoverable lost if not discovered soon.

In cases such as this, courts have recognized that, "[s]ervice of process can pose a special dilemma for plaintiffs . . . in which the tortious activity occurred entirely on-line." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 164 (D. Mass. 2008) (Gertner, J.). Accordingly, courts have developed the following factors to consider when granting motions for expedited discovery to identify anonymous Internet users: (1) a concrete showing of a prima facie claim of actionable harm, (2) specificity of the discovery requests, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy. *See Sony Music Enter. Inc. v. Does 1–40*, 326 F.Supp.2d 556, 564–65 (S.D.N.Y. 2004) *followed by London-Sire Records, Inc.*, 542 F.Supp.2d at 164, n.13 (collecting authorities that have followed the *Sony Music* standard).

   **A.     Liberty Presents a Prima Facie Case of Copyright Infringement**

Liberty has presented a prima facie case that Does 1–38 infringed its valid and registered copyright by participating in and sharing the file associated with the AE3 Hash. These allegations, which are set forth in the Complaint and the Declaration of Dinkela are legally sufficient and grounded concrete facts. Thus, early discovery is appropriate. *See London-Sire*, 542 F.Supp.2d at 164–65 ("[The] standard does not require the plaintiffs to prove their claim. They need only to proffer sufficient evidence that, if credited, would support findings in their favor . . . .").

First and foremost, Liberty is the owner of a valid copyright in the work at issue, and has met its prima facie burden of proof on this point by submitting the certificate of copyright

registration attached to the Complaint as Exhibit 1 (D.N. 1-1).  Liberty has also submitted evidence that the digital media file identified as the AE3 Hash is an identical reproduction of Liberty's copyrighted work, which was created without its consent. *See* Dinkela Decl. ¶¶ 24–26. Thus, Liberty has presented a legally sufficient pleading that anyone who downloaded or distributed the AE3 Hash is liable for copyright infringement.

Moreover, the evidence that the John Doe defendants infringed Liberty's copyright is sufficiently concrete.  As set forth in the Dinkela Declaration, Liberty's investigator took rigorous steps in gathering the IP addresses at issue and confirming that the Does behind these IP addresses were actually distributing infringing copies of Liberty's work.  *See* Dinkela Decl., ¶¶ 18–26.  In particular, the investigator would (1) use search software to identify users who were offering the AE3 Hash to the public, (2) connect to the user and download the file to confirm that the user was in fact making the file available for distribution, (3) review the file to confirm that it is in fact an copy of Liberty's work, and (4) collect publicly available information regarding the file transfer, including the IP address, the time and date of the download, and any meta-data associated with the file. *See Id.*  Thus, the factual underpinnings of Liberty's claim are sufficiently concrete to satisfy the *Sony Music* test.

Furthermore, due to the architecture of the BitTorrent technology, there is little possibility that anyone caught with the AE3 Hash is not guilty of downloading and/or distributing an infringement of Liberty's work.  As discussed in detail in Liberty's complaint, whenever a file is made available on BitTorrent for the first time, it is assigned a unique identifier, or "hash code," such as the AE3 Hash that was assigned to Liberty's work.  Since the AE3 Hash is unauthorized, and since no two files are assigned the same hash code, then it follows that all files bearing the AE3 Hash are unauthorized copies of Liberty's work.  Thus, everyone caught with the AE3 Hash created an infringing copy of Liberty's work by downloading it over BitTorret.  Moreover, given that the BitTorrent protocol takes pieces from every available source to create new copies of the file, there is prima facie evidence to support a claim that each identified person also distributed an infringing copy of Plainitff's work.

### B. Liberty's Discovery Requests Are Reasonably Specific

The information obtained by Liberty's investigator is specific enough to identify the particular individuals responsible for infringing Liberty's copyright. Liberty's investigator has recorded each defendant's IP address at the precise time in which an infringement occurred, which should give the ISPs sufficient information to identify the account holder assigned to that address. *See* Dinkela Decl. ¶¶ 32–33. Moreover, given the specificity of the information Liberty has obtained, there is no reason to suspect that a subpoena would require the ISPs to reveal any information with respect to individuals totally uninvolved with the infringement.

In addition, the subscriber information Liberty is requesting from the ISPs is also narrowly focused on allowing Liberty to discovery the identity of the infringers. In particular, Liberty is seeking to learn the subscribers name, address, telephone number, email address, and Media Access Control ("MAC") address. This information has been found to be appropriately discoverable by other courts in the same situation. *See London-Sire*, 542 F.Supp.2d at 178 and n.34 (early discovery of identifying information was appropriate, and noting the MAC address was "highly probative").

Since 47 U.S.C. §551 (The Cable Privacy Act) prohibits cable operators from disclosing personally identifiable information concerning subscribers without the prior written or electronic consent of the subscriber or a court order, and since some Internet service providers, including those listed above in this motion, are also cable operators, Liberty requests that the Court order state clearly that the Court contemplated the Cable Privacy Act and that the order specifically complies with the Act's requirements. *See* 47 U.S.C. §551.

Additionally, the Internet subscriber is not always the proper defendant in actions such as this. Liberty therefore seeks to depose and/or issue interrogatories to the Internet subscriber identified by each ISP in order to determine whether or not they are the proper defendant in this action. In the interest of judicial economy, Liberty requests pre-authorization to conduct this supplemental discovery.

### C. The Identity of the Does Is Central to Liberty's Case, and It Cannot Otherwise Obtain this Information

There can be little dispute that Liberty meets the requirements of prongs 3 and 4 of the *Sony Music* test because the case cannot proceed without identifying the defendants, and the defendants cannot be identified until the requested information is subpoenaed from the defendants' ISPs. As numerous prior courts have agreed, early discovery is the only way to gain the information necessary to move the case forward. *See, e.g.*, *London-Sire Records, Inc.*, 542 F.Supp.2d at 179 ("Without the names and address [of the John Doe defendants], the plaintiff cannot serve process and the litigation can never progress."); *Sony Music*, 326 F.Supp.2d at 566 (holding that prongs 3 and 4 were met in an analogous copyright infringement suit against anonymous users of a peer-to-peer network).

Liberty has exhausted all available steps and searched all publicly available databases to no avail. Moreover, Liberty is aware of no alternative method of identifying the defendants other than by serving a subpoena on their ISPs. Thus, Liberty's only recourse is a subpoena to the ISPs who have the required information.

### D. The John Does' Expectation of Privacy, If Any, Is Protected by Allowing them 21 Days to Quash the Subpoena

The John Doe defendants' expectations of privacy largely turn on the terms of service agreements with their ISPs, as "many internet service providers require their users to acknowledge . . . that they are forbidden from infringing copyright owner's rights, and that the ISP may be required to disclose their identity in litigation." *See London-Sire Records*, 542 F.Supp.2d at 179. Until these terms of service agreements can be obtained from the ISPs, however, the Does' privacy rights will be sufficiently protected by allowing each defendant 21 days to quash the subpoena before any personally identifying information is disclosed by the ISP.

### **CONCLUSION**

Liberty has shown good cause as to why it should be entitled to early discovery to identify the individual users, and thus asks the Court to Grant the following requests:

1) Liberty requests that the Court issue the requisite Order instructing Charter Communications, Comcast Cable, Verizon Internet Services, and RCN Telecom Services, Inc. to

produce any and all documents and/or information sufficient to identify the user or users of the above IP addresses during the corresponding dates and times as shown in Exhibit A hereto.

   2)  Such discovery should be conditioned on a) the ISPs having 7 calendar days after service of the subpoenas to notify the subscriber that their identity is sought by Liberty, and b) each subscriber whose identity is sought having 21 calendar days from the date of such notice to file any papers contesting the subpoena.

   3)  Liberty additionally requests permission to engage in limited discovery by issuing interrogatories and/or deposing the individuals identified by the ISPs in order to determine whether or not the Internet subscriber is the proper defendant in this action.

Dated: May 9, 2011

Respectfully submitted,

LIBERTY MEDIA HOLDINGS, LLC

By its attorneys,

/s/ Aaron Silverstein
Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the above date, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.  Copies of this pleading will be served on the John Doe defendants when they make an appearance in the case.

/s/ Aaron Silverstein
Aaron Silverstein