UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SWARM SHARING HASH FILE<br>AE340D0560129AFEE8D78CE07F2394C7B<br>5BC9C05; AND DOES 1 through 38,<br><br>    Defendants. | Civil Action No. 11-cv-10802-WGY |

### DEFENDANT'S MOTION TO QUASH SUBPOENAS

Defendant John Doe hereby files this motion to quash any and all subpoenas for production of documents or duces tecum served by the Plaintiffs in the above captioned case, and as grounds therefor avers as follows:

### 1. Plaintiff Improperly Joins Dozens of Individual Defendants Based on Entirely Disparate Alleged Acts.

The Plaintiff has attempted to join at least 38 individual Defendants in this single action and an additional 9 in nearly identical Civil Action No. 11-cv-10801. In doing so, there is significant risk of creating an unfair process that denies individual justice to those being sued. Federal courts deciding file sharing copyright infringement cases have repeatedly rejected such mass joinder of individuals. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

*BMG Music v. Does 1-203*, No Civ.A. 04-650, 2004 (E.D. Pa. Apr 2, 2004), at *1

In *BMG Music v. Does 1-203*, the lawsuit was severed against all but the first defendant. This language has been quoted approvingly in a number of other similar file sharing lawsuits. *See West*

1

*Coast Productions, Inc., v. Does 1-353*, No 3:10-cv-00094-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 45, RJN Ex. A. In that case, a motion to quash a subpoena was filed by one of the involved ISPs, Time Warner Cable. The facts of that case were much the same as they are here, with the Plaintiff claiming infringement of one of its works by a number of Doe defendants using the BitTorrent file sharing protocol. The Court held that all defendants except the first Doe were improperly joined, severed the remaining defendants from the action, and quashed the subpoenas to ISPs seeking to identify those defendants.

The cases above are not isolated. It is possible to find nearly identical orders issued in district courts around the country hearing similar cases. *See Combat Zone, Inc., v. Does 1-1037*, No. 3:10-cv-00095-JPB -JES (N.D. W. Va. Dec. 16, 2010), *ECF No. 71; see also Combat Zone, Inc., v. Does 1-245*, No. 3:10-cv-00096-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 28; *Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv-00092-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Third World Media, LLC, v. Does 1-1243*, No. 3:10-cv-00090-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 66; *West Coast Productions, Inc., v. Does 1-2010*, No. 3:10-cv-00093-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 44.

These courts recognized that Rule 20 requires parties should not be joined unless the claims against them arise from a single transaction or a series of closely related transactions:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, for the defendants to be correctly joined in a lawsuit these three conditions must be met: (1) the right to relief must be "asserted against them jointly, severally, or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and (3) there must be a common question of fact or law for all the defendants. *Id.*

Courts have found that infringement of the same work by numerous defendants is not a sufficient basis for joinder. *See ThermaPure, Inc. v. Temp Air, Inc.*, No. 10-CV-4724, 2010, at *4 (N.D. Ill. Dec. 22, 2002). Here, the court held that "Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark." *Id.*

Using a similar method for committing an illegal activity is likewise an insufficient basis for joinder. *See e.g., Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (the court refused to allow 164 different companies to be joined on the basis of using the same method to cheat agents, with the attempted joinder described as "a gross abuse of procedure").

On the same basis as the above decisions, joinder of defendants using allegedly similar behavior to commit copyright infringement on the Internet has been repeatedly rejected. For example, the District Court for the Western District of Texas rejected the arguments of a recording industry plaintiff that attempted to join 254 defendants accused of illegally downloading its music, stating:

> The claim is against each defendant is individual, based on individual acts of each defendant, and if proven, will result in unique damage claims. The defendants are not properly joined under Rule 20.

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004), (RJN Exhibit B) (the court dismissed all but the first of the defendants in the action).

In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 (E.D.N.C. Feb. 27, 2008), the court severed a lawsuit alleging the defendants had used the same ISP as well as the same file sharing networks to infringe the plaintiff's copyright in the same way. The court explained that "committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Id.* at *2. Similar orders have been issued in *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004), *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C-04-04862 (N.D. Cal. Nov. 16, 2004).

In supporting its argument for joinder in this action, the Plaintiff makes a claim of "a massive conspiracy" among the Defendants to infringe its copyrighted work. Complaint at ¶ 152. This claim relies extensively on discussion of the technical aspects of the BitTorrent file sharing protocol as constituting a "swarm", and asserting that this type of computer communication joins defendants together. However, Plaintiff's claims are substantively the same as many of the above cited cases also involving the BitTorrent protocol. Other courts have rejected attempts to distinguish BitTorrent based file sharing as a unique situation. *See Lightspeed v. Does 1-1000*, No. 1:10-cv-05604 (N.D. Ill. Mar. 3, 2011). Here the court said:

> ...the plaintiff argues that this case is distinguishable because BitTorrent involves more than "'merely committing the exact same violation in the same way' or using the same

3

> ISP as was alleged in those cases." Plaintiff's Opposition, Dkt. #45 at 13. But this
> statement ignores that the BitTorrent protocol is a peer-to-peer file sharing system, which
> was at issue in the *LaFace Records* case. Thus, the court finds the plaintiff's attempt to
> distinguish its case from the others cited above unpersuasive and that Rule 20(a)(2)(A)
> has not been satisfied.

*Id.*

Even if the requirements for permissive joinder under Rule 20(a)(2) had been met, this court would nonetheless have broad discretion to refuse joinder under Rule 21 in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding the principles of fundamental fairness. *See, e.g., Intercon Research Assocs., Ltd. v. Dresser Indus, Inc.*, 696 F.2d 53, 57-58 (7th Cir. 1982) (citing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)) ("[A] trial court must . . . determine whether the permissive joinder of a party will comport with the principles of fundamental fairness."); *see also Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010); *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2D 556, 580-81 (E.D.N.Y.1999), and *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir.2000)).

The joining of thirty-eight unrelated defendants in a single action may be more convenient and less expensive to file for the Plaintiff, but the established principles of joinder must nonetheless apply. Other courts considering mass copyright infringement matters have noted and rejected similar tactics as attempts to avoid paying multiple filing fees. *See, e.g., General Order, UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004, (RJN Exhibit B) (ordering severance of 254 defendants sued in four cases before it, and noting that: "[t]he filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100.").

### 2. Plaintiff Has Not Made the Requisite *Prima Facie* Case for Each Defendant.

Importantly, the Plaintiff has not provided sufficient *prima facie* evidence to show that any of the John Doe Defendants infringed the Plaintiff's copyrighted work. In the Declaration of Malte Dinkela, the Plaintiff offers only general and conclusory assertions by its agent. The declaration explains that said agent "has licensed a proprietary technology that provides an effective means of detecting the unauthorized distribution of movies and other content over P2P networks". Dinkela Decl. at ¶ 7. No evidence has been entered in support of such generalized claims beyond the word of Malte Dinkela, nor does the remainder of the declaration provide sufficient documentation to independently verify the accuracy of the methodology.

>In part, Dinkela documents that as part of Excubitor's investigative process:
>
>>...we obtain the Internet Protocol ("IP") address of a user offering the file for download. Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. ... We also collected other publicly available information that is designed to help Plaintiff identify the infringer. ... We then created evidence logs for each user and stored all this information in a database.

Dinkela Decl. at ¶¶ 22-23

Plaintiff only summarily provides a list of IP Addresses, Hit Dates, ISPs, and Estimated Cities for each Defendant in the case. *See* Dinkela Decl. at Exhibit A. The declaration merely suggests that further evidence has been gathered for each Defendant while failing to actually provide such. With this meager evidentiary showing, Plaintiff does not meet its *prima facie* burden for purposes of expedited discovery.

Instead of the generalized and conclusory showing made to date, Plaintiff must present *specific* evidence resulting from its investigation, for *each* Defendant. At a minimum, it must present competent evidence of how the proprietary technology upon which it relies actually functions. Further, it must fully document the investigative methodology used to a degree of completeness that would actually allow Defendants (and the Court) to evaluate and potentially argue against the Plaintiff's conclusions. Absent this, Defendants who believe they have been falsely accused of downloading the pornographic work in question have no clear method to rebut the Plaintiff's arguments.

A requirement of specific evidence for each defendant would be consistent with the requirements set forth by other courts in similar cases. Other courts have found that the *prima facie* burden was met with the submission of computer screen shots showing the IP address of each defendant, copies of data or computer screen shots showing the activities of the "proprietary technology" used, and data to show that the downloaded movie was the same as the Plaintiff's original work, for each of the defendants in the case. *See, e.g., Elektra Ent. Group, Inc*, 2004 WL 2095581, at *4. This evidence, if it exists, would already be available to the Plaintiff prior to discovery and should thus have been provided as part of its *prima facie* showing. *See Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001), at 769-70 (presenting allegations of a link between Defendant's posts and stock prices without proof of causation was not sufficient to survive the heightened discovery standard provided by the First Amendment).

Further, even if we are to assume that Plaintiff has been completely accurate in its list of IP addresses through which they claim infringement occurred, little method has been presented as to how Plaintiff intends to discover the individual who was using that IP address at the time of infringement.


Plaintiff's instant subpoenas will provide it with only the contact information of the persons on record with the ISPs for the accounts associated with these IP addresses. Any number of individuals may have access to this account. Another court noted that such complaints often ignore the fact that "IP subscribers are not necessarily copyright infringers. ... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *VPR Internationale v. Does 1-1017*, 2:11-cv-02068-HAB -DGB #15 (C.D. Ill. Apr 29, 2011)

The Plaintiff does further state in its memorandum in support of the motion that it may seek to "depose and and/or issue interrogatories to the Internet subscriber identified by each ISP in order to determine whether or not they are the proper defendant in this action". In this statement, the Plaintiff makes it appear that they have satisfied the concerns expressed in *VPR Internationale v. Does 1-1017* while actually suggesting a scenario that amounts to a practical impossibility. Suppose that an example in the VPR case held true and the actual copyright infringer could be found to be a neighbor of one of the identified IP subscribers. Home computer networking equipment is typically not equipped with the kind of logging functions that would have preserved any evidence of this event, especially given that some of the alleged infringements are said to have occurred as long as six months before the issuance of this complaint. The IP subscriber is thus likely to possess no further evidence related to the infringement that could be discovered through said depositions or interrogatories.

However, should there be a lack of further evidence found in discovery, this does not prove the innocence of the IP subscriber either. Said individual may very well have infringed the Plaintiff's work but proceeded to deny doing so. Given the lapse of time between the alleged incidents and the issuance of this complaint, any tangible evidence of the event may have long since been intentionally or unintentionally destroyed. Thus, the evidence that the Plaintiff claims to seek may very well be nonexistent and unrecoverable even by the most extensive of discovery procedures.

How then would the Plaintiff intend to proceed in identifying the proper defendants in this action? They have presented no credible strategy for obtaining evidence of infringement beyond that which they already possess and the IP subscriber information sought in the instant subpoena to ISPs. Given that Plaintiff has not yet even conclusively met its *prima facie* burden for further discovery, it is highly unlikely that this alone would be sufficient to succeed at trial.

Indeed, given the significant challenges faced by the Plaintiff, one can find very few examples where cases of this type have been litigated successfully. It may be that Plaintiff's best and in some

cases only path to prevail in this action is for the IP subscriber to simply admit responsibility. As will be discussed in the following section, Plaintiff may be in a strong position to coerce Defendants to do so regardless of the actual strength of its evidence.

**3. Plaintiff is attempting to use the discovery process only to unmask and coerce pretrial settlements from IP subscribers.**

It must be emphasized that the work in question in this case, "Down on the Farm", is in fact a gay pornographic production. While such works are no less entitled to copyright protection than others, the potential effect on the defendants in this action calls for extreme caution before revealing their identities.

While we cannot know for certain how the Plaintiff intends to proceed, there is a common course of action that has been repeated throughout many of the above cited file sharing cases. Should Plaintiff succeed in identifying the IP subscribers the likely course of action is to contact each of the individuals and demand a monetary payment for settlement of the claims in question. Although the damages claimed in this action amount to at least $150,000 per defendant, settlement demands could be made for as little as several hundred to several thousand dollars. Once given this payment the Plaintiff would proceed to amend its complaint to dismiss the associated Defendants.

If Defendants do not capitulate to the demands of the Plaintiff they would likely then be named specifically in this lawsuit. Identification as a party in this lawsuit amounts to a public accusation that the Defendant has downloaded and viewed gay pornography. Clearly, at a minimum, this would be a source of embarrassment for many of the Defendants. The implications with respect to the sexual orientation and habits of the Defendants may further cause significant reputational harm and intrusion upon their privacy. As such, the Court must proceed with caution before allowing the Defendants to be unmasked.

Should a Defendant wish to fight the Plaintiff's claims he would have to overcome not only this potential harm but the potentially high cost of hiring counsel to litigate the matter. Even if Defendant believes himself to be innocent of the claims, many would view a settlement offer for some few thousand dollars from the Plaintiff as comparatively attractive. The Hon. Harold A. Baker, in denying interlocutory review of a dismissal of a similar case in the Central District of Illinois, pondered:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect." Could expedited discovery be used to

> wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

*VPR Internationale v. Does 1-1017*, 2:11-cv-02068-HAB -DGB #15 (C.D. Ill. Apr 29, 2011)

In this situation, one must ask whether the Plaintiff's quest for information is primarily an effort to use the judicial process to coerce settlements before the flaws in its case can be revealed. This strategy would be consistent with many other lawsuits filed by media producers against tens of thousands of individuals. Porn industry representatives have shown that they are keenly aware of their power for coercion in these cases. The company Pink Visual, which had recently held a retreat with other industry representatives to discuss content protection, stated in an interview with Agence France Presse:

> "It seems like it will be quite embarrassing for whichever user ends up in a lawsuit about using a popular shemale title," Vivas said, using a term that refers to a person who has female features but male genitalia. "When it comes to private sexual fantasies and fetishes, going public is probably not worth the risk that these torrent and peer-to-peer users are taking."

*Porn Titans Come Together to Expose Pirates*, THE INDEPENDENT (Sept. 27, 2010) http://www.independent.co.uk/arts-entertainment/films/porn-titans-come-together-to-expose-pirates-2090786.html.

Some copyright lawyers have echoed the idea that such cases are primarily an effort to coerce John Doe defendants to quickly settle. One commenter stated "I would suppose that most people would want to settle rather than being named in a lawsuit of this nature." (John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases,* TEXAS LAWYER, Oct. 4, 2010)

This lawsuit must rest on the merits of the Plaintiff's claims against each individual Doe defendant, not the risk of public exposure of these claims. At a minimum this Court should require that Plaintiff resolve the cited evidentiary shortcomings before being allowed further discovery.

## Conclusion

The Plaintiff certainly has every right to seek redress for its allegations of copyright infringement, but it must follow the procedures and due process requirements applicable to all civil litigation. Disregard for these procedures would further disenfranchise the Defendants who are now at risk of having their identities exposed and then finding that a settlement is more economically feasible than presenting a defense against this action, even if they may have broken no laws or may have other

meritorious defenses against Plaintiff's claims. The interests of justice are not served if this Court allows its discovery mechanisms to be used as part of a shakedown against anonymous Internet subscribers.

Defendant John Doe therefore respectfully urges this court to quash the Plaintiff's subpoenas on the grounds that (1) it has improperly joined many individual defendants together without meeting the joinder requirements of Rule 20, (2) it has not provided sufficient evidence to the Court to make its required *prima facie* case against each of the individual Defendants, and (3) it will likely use information from these subpoenas as part of a campaign to coerce settlements from IP subscribers without clear evidence of the subscriber's actual responsibility.

Dated: June 18, 2011

Respectfully submitted,

*John Doe*
John Doe
Pro-se