UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SWARM SHARING HASH FILE AE340D0560129AFEE8D78CE07F2394C7B5BC9C05; AND DOES 1 through 38,<br><br>    Defendants. | Civil Action No. 11-cv-10802-WGY |

**OPPOSITION TO MOTION TO QUASH (D.N. 13)**

No one, not even the John Doe who filed the present motion to quash, disputes that the plaintiff, Liberty Media Holdings, Inc. ("Liberty Media") is entitled to vindicate its copyright against the anonymous infringers who pirate its work over the BitTorrent file trading protocol. "Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interest." *Arista Records LLC v. Does 1–27*, 584 F.Supp.2d 240, 252 (D. ME 2008). The joinder of 38 Massachusetts defendants — who each stand accused of copying and distributing the same exact infringing file — is a procedurally proper way for Liberty Media to vindicate its rights. Moreover, focused joinder of the Massachusetts defendants from a single swarm is a pragmatic solution that overcomes the practical challenges of enforcement in a way that benefits everyone, even the putative defendants. Thus, Liberty Media respectfully requests that the Court deny the pending Motion to Quash (D.N. 13) and allow this case to move forward.

## BACKGROUND

Liberty Media is the copyright owner for a number of adult films that are frequently pirated over the internet by use of the BitTorret peer-to-peer ("BitTorrent") protocol. Indeed, the piracy of its copyrighted works is so widespread that Liberty Media had little choice but to launch a nationwide campaign of enforcement. The objective of this campaign is to prosecute current infringers in an effort to deter illegal trafficking in its films via BitTorrent and other peer-to-peer networks. It is imperative that internet infringers understand that Liberty Media not only has a legal recourse, but that it will not hesitate to assert its rights.

The John Doe defendants in the present lawsuit were all selected based on two criteria: (1) they were each caught distributing over BitTorrent the so-called AE3 Hash, which is the unique alphanumeric identifier assigned to one particular illicit copy of Plaintiff's copyrighted motion picture, and (2) they all have Internet Protocol ("IP") addresses that are traceable with publicly available information to Massachusetts. *See* Dinkela Decl., ¶¶ 20, 26.[1] This suit operates in parallel with 11-CV-10801-WGY, which is a suit against another BitTorrent swarm formed around a second illicit copy (the A3E Hash) of the same motion picture.

The Court granted Liberty Media's Motion for Early Discovery on May 11, 2011, so it could subpoena the putative defendants' Internet Service Providers ("ISPs") in order to obtain the subscriber information to identify the John Does. Under the Court's order, subscribers have 21 days from the date that notice was sent by the ISP to object to the subpoena before their information is disclosed. In a demonstration of its good faith, Liberty Media has instructed

---

[1] Declaration of Malte Dinkela, May 9, 2011 (D.N. 8) ("Dinkela Decl.").

Comcast, Charter, and Verizon to withhold subscriber information until the present motion to Quash is resolved.[2]

## A.     Infringement Over BitTorrent is a Collective Enterprise

The BitTorrent protocol, which all the putative defendants used to infringe Liberty Media's copyright, has made it exceptionally easy for individuals to simultaneously download and then redistribute large electronic files, such a movies, over the internet.  BitTorrent accomplishes this by cleverly overcoming a major limitation of bandwidth by organizing all users who have or want a particular file into a "swarm," or collective distribution network.  *See* Dinkela Decl., ¶¶ 13–15.

Bandwidth, which is generally measured in megabits per second ("Mbit/s"), is the speed at which files can be transferred over the internet.  Most internet users have more bandwidth devoted to downloads than they do to uploads.  For example, one common Comcast plan allows for downloads of up to 20 Mbit/s, but restricts uploads to 4 Mbit/s.  *See* Ex. A, Comcast BLAST Internet Service.

This lower upload bandwidth is a problem for traditional peer-to-peer networks, such as Napster or Kazaa, because these services operated by, in effect, brokering a connection between one uploader with a file and one downloader who wanted that file. The problem with this 1-to-1 connection, however, is that the file can only transfer as fast as the host can upload it.  Since our hypothetical Comcast subscriber's upload is limited to 4 Mbit/s, the downloader has 16 Mbit/s of bandwidth that goes to waste.  Moreover, if the uploader logs off or loses its connection before the transfer is complete, the downloader must start from scratch by identifying a new host who

---

[2] RCN, which was the first ISP to notify its subscribers, had already complied with the subpoena when the present motion to quash was filed.  Neither RCN subscriber objected to the Subpoena.

has the file.  *See* Ex. B, How Stuff Works.com, How BitTorrent Works; Ex. C, BitTorrent Explained.

To use an analogy, if traditional peer-to-peer is like a giant swap meet for trading books, then each uploader would have a stall with a copy machine in it.  When a downloader selects a book from one of these stalls, he has to wait around while the uploader copies all the pages.  And if the uploader closes shop before the copy is complete, then the downloader is out of luck.

BitTorrent overcomes this limitation by forcing all available uploaders to work collaboratively.  When a file is first made available on BitTorrent, it is assigned a unique alphanumeric identifier or "hash code" and it is broken up into a number of bite sized pieces.  When a new downloader requests the file, every available uploader who has a copy of that file starts sending him different pieces, which the downloader can reassemble into the complete work.  Thus, by working together, a swarm of 20 users, each transferring 1 Mbit/s, can maximize the 20 Mbit/s download speed of our hypothetical Comcast subscriber.  And, it doesn't matter if a particular host drops out because there are other hosts with an identical copy of the file who are able to complete the transfer.  *See* Ex. Dinkela Decl. ¶¶ 9–17; *see also* Exs. B, C.

Moreover, BitTorrent further maximizes the available bandwidth by immediately converting downloaders into uploaders.  As soon as a downloader receives a single piece of the file, he becomes an uploader, transferring that piece to any other collaborator who needs it.  Indeed, BitTorrent actively enforces tit-for-tat by punishing "leechers," or users who do not contribute uploads.  *See* Dinkela Decl., ¶ 16; Ex. B, p5 (BitTorrent "uses a principal called tit-for-tat.  This means that in order to receive files, you have to give them.").

Thus, if a traditional peer-to-peer networks is like an individual stall at a marketplace, then BitTorrent is like a room full of copy machines.  When a downloader requests a book,

everyone with the book, or even just part of it, starts sending him pages.  So the downloader gets 10 pages from this user, 2 pages from that use, and 5 pages from this other user, and so on, until he has collected all the pages he needs.  All the room asks is that the downloader set up his own copy machine to help shoulder the burden by redistributing the pages he has.

In summary, BitTorrent technology thus has three key implications that favor joining members of the swarm in a single action:

(1) BitTorrent is deeply collaborative, as not only do many uploaders contribute to each download, all users rely upon and directly benefit from the collaboration with increased speeds and reliability.

(2) Downloaders are quickly converted to uploaders, so each user is a member of the chain of distribution.

(3) Since a swarm, at its heart, is organized around a particular file that has been assigned a unique hash code, everyone who is caught with that hash code is part of the swarm and part of the chain of distribution for that file.  Moreover, hash codes are, in effect, like fingerprints or genetic markers, which show that the file has been obtained illicitly and not independently created through innocent means.

### ARGUMENTS

**I.   The Court Should Not Consider Completely Anonymous Motions to Quash**

As a preliminary matter, the Court should strike or not consider the present motion to quash because the complete and total anonymity of the John Doe filer violates both the letter and spirit of the rules regarding standing and Federal Rule of Civil Procedure 11.  Filing a document signed "John Doe" is not sufficient to confer standing to participate in this action.  *See Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. VA 2004) (denying request to proceed anonymously in part

because "standing to litigate these issues clearly does depend on their identity") *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 601-61 (1992). Central to Doe's standing is whether he has a "personal stake" in the controversy's outcome. *See e.g., Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983); *see also Lujan*, 504 U.S. at 601-61. In this case, Doe has not identified himself as a particular defendant or provided a sworn statement that he is a particular subscriber affected by Liberty Media's subpoena. As such, Doe lacks standing for this Court to entertain his Motion.

Similarly, Rule 11 requires that any paper be struck unless it is "signed by . . . a party personally if the party is unrepresented . . ." and "must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. 11(a). While there may be cause for relaxing these requirements given the present circumstances, there must be some way for the Court to hold the filer accountable for his actions and representations.

## II. JOINDER OF DOES 1–38 IS PROPER AND PRACTICAL

The Joinder of Does 1–38 to the present action is not only procedurally proper, it is the only practical and feasible method for Liberty Media to vindicate it copyright and the only efficient means for the Court to administer justice. Thus, the Court should allow this case to proceed against all Defendants jointly.

Pursuant to Federal Rule of Civil Procedure 20(a)(2), "Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative <u>with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences</u>; and

(B) any question of law or fact common to all defendants will arise in the action.

*Fed. R. Civ. P.* 20(a)(2) (emphasis added). "The requirements for permissive joinder are liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action. Thus, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *See Voltage Pictures, LLC v. Does*, _ F.Supp.2d _, 2011 WL 1807438, *5 (D.D.C. 2011) (internal citations omitted) (holding that 5,000 John Doe BitTorrent users were properly joined).

A number of prior courts who have evaluated the joinder issue in the context of John Does file trading suits, and particularly in the context of BitTorrent, have concluded that joinder was not only proper, it was the best and most efficient way to administer such lawsuits. *See Id* at *5 (allegations of infringement over BitTorrent satisfied Rule 20 joinder); *London Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 162 (D. Mass 2008) (Gertner, J.) (Consolidating multiple John Doe suits because consolidation "ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any that other John Does have raised"); *Call of the Wild Movie, LLC v. Does 1–1,062*, _ F.Supp.2d _, 2011 WL 996786, *3 (D.D.C. 2011) (collecting authorities allowing permissive joinder); *Arista Records LLC v. Does 1–27*, 584 F.Supp.2d 240, 251 (D. Me. 2008) (severance is premature before defendants are named in the complaint and provide individualized reasons for severance); *West Coast Productions, Inc. v. Does 1–5829*, _ F.Supp.2d _, 2011 WL 2292239, *5 (D.D.C. 2011) (joinder of 5,829 alleged BitTorrent infringers proper).

    **A.**    **By Engaging in a BitTorrent Swarm to Distribute the AE3 Hash, Does 1–38 Satisfy the Transaction or Occurrence Test**

The Transaction or Occurrence test is satisfied because each of the 38 Doe Defendants are logically tied together by the fact that they collectively distributed the infringing AE3 Hash

over BitTorrent.  At its heart, the Transaction or Occurrence test looks to see whether the joined parties are "logically related," which "is a flexible test and courts seek the broadest possible scope of the action."  *See Voltage Pictures, LLC*, 2011 WL 1807438, *5.  The BitTorrent protocol ties each of the putative defendants closely together in a series of transactions that amount to a collective act of mass infringement.  Unlike traditional peer-to-peer networks, which broker a 1-to-1 connection between an uploader and a downloader, a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, and where a group of uploaders collaborate to speed the completion of each download of the file.  Thus, contrary to John Doe's assertion, the putative defendants do not engage in isolated acts of infringement, but rather collectively partake in mass infringement of not just the same work, but the same exact file, namely the AE3 Hash.  *See Id.* (denying severance based on plaintiff's allegations that "each putative defendant is a possible source for the plaintiff's motion picture, and may be responsible for distributing this copyrighted work to the other putative defendants, who are also using the same file-trading protocol to copy and distribute the same copyrighted work").

Indeed, in the AE3 Hash, the present lawsuit has a clear center of gravity.  Each John Doe defendant identified in the complaint was <u>caught</u> distributing not just Plaintiff's work, but this *specific infringing file*.  Thus, much like a fingerprint or a genetic marker, the AE3 Hash can tie each putative defendant to this BitTorrent swarm and to the infringing chain of distribution.

It is further worth noting that Liberty Media has alleged that the Doe defendants are liable for <u>Contributory Infringement</u> for their respective contributions to each other's infringement of copyright.  This count goes directly to the interaction between the putative defendants, and, as such, all the contributors are subject to joinder in this suit.

8

Moreover, the present case is distinguishable from the *Lightspeed*[3] line of cases (which are relied upon by John Doe) because each of the putative defendants are alleged to have been part of the chain of distribution for the AE3 Hash. *See Voltage Pictures, LLC*, 2011 WL 1807438, *5 (distinguishing *Lightspeed* because "in contrast to the instant claim of infringement of a single copyrighted work . . . [*Lightspeed* alleged] infringement of multiple works, a factor that may undermine the requisite showing of concerted activity"). Moreover, the *Lightspeed* decision has been criticized because it does not account for the collaborative nature of BitTorrent distribution. *See Id.* (noting that the *Lightspeed* court failed to "discuss the precise nature of the BitTorrent technology, which enables users to contribute to each other's infringing activity of the same work as part of a swarm").

Indeed, the present situation is closely analogous to the long line of cases which hold that members of a distribution chain are all permissibly joined to a copyright infringement lawsuit. *See e.g., Costello Pub Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) ("Courts have long held in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. Since joint tortfeasors are jointly and severally liable, the victim of . . . infringement may sue as many or as few of the alleged wrongdoers as he chooses."). Indeed, if Doe 1 shipped an infringing DVD to Doe 2, who in turn shipped it to Doe 3, there would be no question that all three Does could be properly joined in suit. The fact that the putative defendants in this case used BitTorrent technology to accomplish

---

[3] *Lightspeed v. Does 1–1000*, 10-c-5604, D.N. 53 (N.D. IL 2011). The *Lightspeed* decision appears to be driven not by an understanding of the collaborative nature of BitTorrent, but by the court's concerns regarding the administrative burden of dealing with 1,000 defendants, most of whom were not located in the court's jurisdiction. *See Id.* ("given the number of potential defendants . . . this court could be faced with hundreds of factually unique motions to dismiss, quash or server from potential defendants located all over the country"). Liberty Media's case suffers from neither defect, as it is limited to Massachusetts IP addresses, and 38 defendants is a manageable number.

the same distribution faster and more efficiently is no reason to depart from this settled legal principal. If anything, the technical ease with which the Does pilfered Liberty Media's work is added reason to strengthen Liberty Media's right to round up this ring of infringers in a judicially efficient process.

      **B.**      **Does 1–38 Are Tied Together by Common Questions of Law and Fact**

The second prong of Rule 20(a)(2) is satisfied because there are a number of common questions of law and fact that will be applicable to each of the defendants. In particular, the common questions include, but by no means are limited to:

    (1) identifying the John Doe defendants;

    (2) the validity of Liberty Media's copyright;

    (3) numerous factual questions regarding how the BitTorrent protocol functions; and

    (4) establishing that the AE3 Hash is an infringing copy of Liberty Media's work.

*See Call of the Wild Movie, LLC*, 2011 WL 996786 at *5 (identifying common issues of the validity of the copyright and factual issues regarding the BitTorrent protocol and plaintiffs investigative method).

Moreover, the bald possibility that defendants may raise separate affirmative defenses is no reason to forego the efficiency of a consolidated proceeding for the common issues. *See Id.* ("different factual and substantive legal defenses [do not] defeat, at this stage of the proceeding, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).").

      **C.**      **Joinder Is a Pragmatic Procedural Solution that Will Not Prejudice Defendants**

Not only is joinder of Does 1–38 procedurally proper, it is the only procedural solution that makes pragmatic sense for the Court, the Plaintiff, the ISPs, and even the Defendants. *See London-Sire Records, LLC*, 542 F.Supp.2d at 161 (noting that consolidation "allows the

defendants to see the defense, if any, that other John Does have raised"); *Call of the Wild Movie, LLC*, 2011 WL 996786 at *6 ("The putative defendants are not prejudiced but likely benefited by joinder, and severance would debilitate the plaintiff's efforts to protect their copyrighted materials and seek redress from the putative defendants who have allegedly engaged in infringing activity.").

Consider, for example, what would happen if severance is granted. For Liberty Media to vindicate its rights, it would have to file 38 near identical complaints and 38 near identical motions for early discovery. The Court would then have to review and rule on the 38 motions. Then the ISPs would have to respond to 38 near identical subpoenas, and so on. Such a inefficient procedure would do nothing but waste the Court's time and resources, increase the Plaintiff's administrative costs, multiply the burden on the third-party ISPs, and bury a determination on the merits under mounds of wasteful procedure.

Joinder, on the other hand, "ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." *See London-Sire Records, Inc.*, 542 F.Supp.2d at 161 (justifying the consolidation of unrelated John Doe actions through discovery). Furthermore, 38 defendants is a manageable number from the Court from an administrative prospective.

Indeed, the only ones *not* benefitted by joinder are the infringers who are hoping to find a procedural loophole through which to escape from answering on the merits for their copyright infringement. It is worth noting that the anonymous *pro se* filer of the present motion never protests <u>his or her</u> innocence, as one might expect of someone who was actually wrongfully accused. Making the case so procedurally unwieldy that infringers escape a judgment, however, is not in the interests of justice, fairness, and a speedy determination of the case on the merits.

11

*See Call of the Wild Movie, LLC*, 2011 WL 996786 at *6–7 (denying severance because alternative would cause plaintiff to "face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their case . . . This would certainly not be in the interests of convenience and judicial economy, or secure a just, speedy, and inexpensive determination of the action.").

### III. It is Premature to Consider Arguments on the Merits Before Defendants Are Named

Liberty Media notes that many of the John Doe filer's arguments go toward challenging the plaintiff's copyright claim on the merits. It is well settled, however, that it is premature to consider arguments on the merits, let alone affirmative defenses, before any of the defendants are named in the case.[4] *See Achte/Neunte Boll Kino Beteiligungs GmbH & Co. v. Does 1–4,577*, 736 F.Supp.2d, 212, 215 (D.C. Cir. 2010) ("[T]he merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at this stage of the proceedings."); *Voltage Pictures, LLC*, 2011 WL 1807438, *2 ("A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information. That would deny the plaintiff access to the information critical to bringing these individual properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses."); *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d at 176 (plaintiffs "are not required to win their case in order to serve the defendants with process.").

---

[4] The purported defendant's concern about the availability of proof is one that the judicial system is well equipped to solve. Liberty Media's burden is not Cartesian certainty, but rather a preponderance of the evidence as determined by the trier of fact. In the end, the jury will decide whether or not it believes the defendant's denials, given the evidence Plaintiff has martialed, and is able to martial, through the discovery process.

Moreover, the John Doe defendants are not entitled to litigate this case on the merits anonymously. *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm . . . . The risk that a plaintiff may suffer some embarrassment is not enough."); *West Coast Productions, Inc.*, 2011 WL 2292239 at *2 (denying requests proceed anonymously in a BitTorrent suit). Liberty Media is sensitive to the fact that allegations of infringing gay pornography may be embarrassing to some defendants, but embarrassment alone is not a reason to overcome the public's interest in open and transparent litigation. And if any defendant suffers from a particularly precarious circumstance, the appropriate recourse is not to flatly prevent Liberty Media for asserting a valid claim.

Liberty Media has met its threshold showing that its claims for copyright infringement are "no mere fishing trip" by submitting evidence of its prima facie claim for copyright infringement. "The plaintiff need not actually prove their case at this stage; they need only present evidence adequate to allow a reasonable fact-finder to find that each element of their claim is supported." *See London-Sire Records, LLC*, 542 F.Supp.2d at 176 (declining to consider the "precise nature of the evidence gathered by the investigator"). Liberty Media's investigator has testified in his sworn declaration that "[a]s of January 31, 2011, Excubitor identified at least thirty eight (38) unique IP addresses traceable to the Commonwealth of Massachusetts that were engaged in the unauthorized downloading and distribution of the AE3 Hash." Dinkela Decl., ¶ 26. This testimony, combined with the other statements of the Dinkela Declaration, satisfy Liberty Media's burden for this preliminary stage of the case. If they are named in suit, the defendants will have ample opportunity to challenge the investigator's findings on the merits, "[b]ut these are substantive defenses for a later stage." *Id.*

**IV.     Liberty Media's Actions and Motives Are Just and Proper**

Liberty Media is the owner of the valid and enforceable copyright of a work that is being wildly infringed over the BitTorrent protocol by anonymous internet users. As keenly articulated by Judge Woodcock, there is no impropriety is seeking appropriate redress for this harm:

> [T]he Court begins with the premise that the plaintiffs have a statutorily protected interest in their copyrighted materials and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interest.

See *Arista Records LLC v. Does 1–27*, 584 F.Supp.2d 240, 252 (D. ME 2008) (dismissing concerns regarding the potential abuse of the judicial process). Given that Liberty Media's ultimate objective is deterrence, it will happily take these cases to trial if need be. But it is not obligated to, nor is it going to, foist wasteful litigation on individuals who wish to admit their guilt and make right the harm they've cause.

**V.      CONCLUSION**

For the foregoing reasons, Liberty Media respectfully requests that the Court deny the present Motion to Quash (D.N. 13).

Dated: July 1, 2011

Respectfully submitted,

LIBERTY MEDIA HOLDINGS, LLC

By its attorneys,

/s/ Aaron Silverstein
Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the above date, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants. A copy has also been served on Doe 2, via first-class mail at the return address that he supplied.

/s/ Aaron Silverstein
Aaron Silverstein