UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>SWARM SHARING HASH FILE AE340D0560129AFEE8D78CE07F2394C7B5BC9C05; AND DOES 1 through 38,<br><br>        Defendants. | Civil Action No. 11-cv-10802-WGY |

**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH FILED BY DOE NO. 2 (D.N. 12)**

The Plaintiff, Liberty Media Holdings, Inc. ("Liberty Media") respectfully requests that the Court deny the pending motion to quash filed by John Doe No. 2 (D.N. 12). By signing his name to the certificate of service and including his return address on the service envelope, Doe 2 has largely mooted his own motion to quash. In any event, the motion to quash presents no issue that would require that the subpoena be quashed or modified.

**BACKGROUND**

Liberty Media is the copyright owner for a number of adult films that are frequently pirated over the internet by use of the BitTorret peer-to-peer ("BitTorrent") protocol. Indeed, the piracy of its copyrighted works is so widespread that Liberty Media had little choice but to launch a nationwide campaign of enforcement. The objective of this campaign is to prosecute current infringers in an effort to deter illegal trafficking in its films via BitTorrent and other peer-to-peer networks. It is imperative that internet infringers understand that Liberty Media not only has a legal recourse, but that it will not hesitate to assert its rights.

1

The John Doe defendants in the present lawsuit were all selected based on two criteria: (1) they were each caught distributing over BitTorrent the so-called AE3 Hash, which is the unique alphanumeric identifier assigned to one particular illicit copy of Plaintiff's copyrighted motion picture, and (2) they all have Internet Protocol ("IP") addresses that are traceable with publicly available information to Massachusetts.  *See* Dinkela Decl., ¶¶ 20, 26.[1]  This suit operates in parallel with 11-CV-10801-WGY, which is a suit against another BitTorrent swarm formed around a second illicit copy (the A3E Hash) of the same motion picture.

The Court granted Liberty Media's Motion for Early Discovery on May 11, 2011, so it could subpoena the putative defendants' Internet Service Providers ("ISPs") in order to obtain the subscriber information to identify the John Does.  Under the Court's order, subscribers have 21 days from the date that notice was sent by their ISPs to object before their information is disclosed.  In a demonstration of its good faith, Liberty Media has instructed Comcast Corp. ("Comcast"), the ISP for Doe 2, to withhold Doe 2's subscriber information until the motion to Quash is resolved.

## ARGUMENT

The present motion to quash appears to assert the following arguments:

(1) Objections to Joinder;

(2) Technical Objections to the Subpoena;

(3) Objections based on when Comcast effected notice; and

(4) Objections Based on the Merits of Liberty Media's Claim.

---

[1] Declaration of Malte Dinkela, May 9, 2011 (D.N. 8) ("Dinkela Decl.").

Liberty Media addresses the joinder issue in great detail in Liberty Media's Opposition to Motion to Quash (D.N. 13), which is filed concurrently herewith. Thus, to streamline the briefing, it refers to and incorporates those arguments by reference into its present opposition.

Doe 2's other arguments are without merit for the reasons discussed below.

## I. THE MOTION TO QUASH IS LARGELY MOOT BECAUSE DOE 2 DISCLOSED HIS IDENTITY

As a preliminary matter, Liberty Media notes that this motion to quash is largely moot because by signing the certificate of service in his own name and including his return address on the service envelope, Doe 2 has in fact voluntarily "provided the most critical information sought by the subpoenas" *See Achte/Neunte Boll Kino Beteiligungs GmbH & Co. v. Does 1–4,577*, 736 F.Supp.2d, 212, 215 (D.C. Cir. 2010) ("It must be noted that by filing their motions to quash on the public record of the Court . . . Their motions to quash could be deemed moot."). While Liberty Media still requires the information from his ISP in order to establish a proper chain of evidence, Doe 2's free public disclosure of his personally identifiable information clearly defeats any privacy concerns that he may have had.

## II. COMCAST HAS WAIVED ANY TECHNICAL OBJECTIONS TO THE SUBPOENA

The subpoena at issue is addressed to Comcast, and as such, Comcast is the only party with standing to raise objections regarding burdensomeness or to the technical form of the subpoena. *See See West Coast Productions, Inc. v. Does 1–5,829*, _ F.Supp.2d _, 2011 WL 2292239, *6 (D.C. Cir. 2011) ("objections raised by movants, such as those based on alleged defects in the form of the subpoena or improper service, may only be raised by the ISPs themselves in an appropriate motion to quash or for a protective order."). Comcast, however, has not moved to quash, and therefore has waived any such objections.

Moreover, even if Doe 2 had standing to object, the objections that he raises would not be grounds for quashing the subpoena.  First, the fact that Comcast is located more than 100 miles from the site of production is irrelevant because Rule 45(c)(3)(ii) only prevents witnesses from having to <u>travel</u> more than 100 miles.  Witness travel, however, is not required for Comcast to produce the information requested in the subpoena.  *See* Fed. R. Civ. P. 45(c)(2)(a).

Second, the subpoena is only requesting that the ISP disclose subscriber records for who was using a particular IP address at a particular time, thus the subpoena itself need not contain "specific information about the claimed copyrighted work."  Motion at ¶ 3.  The information Doe 2 is seeking, however, is readily available in the pleadings, particularly in the Complaint for Copyright Infringement and the Dinkela Declaration.

### III.   DOES WERE ALLOWED 21 DAYS TO OBJECT, SO TIMING IS NOT GROUNDS FOR OBJECTION

Pursuant to the Court's Order, "[t]he ISPs shall not respond to the Rule 45 subpoena until twenty one days after it has <u>sent</u> the Notice to each Doe defendant."  *See* Order Granted Plaintiff's Emergency Ex-Parte Motion for Early Discovery, ¶ 5 (D.N. 11).  Since the subscriber's deadline to object extends from the date notice was <u>sent</u>, Doe 2 is in no way prejudiced by the fact that it took Comcast more than 7 days to notify him.[2]  Indeed, Doe 2's subscriber information <u>has not been disclosed</u>, and will not be disclosed by Comcast until the present motion to quash is resolved.  Thus, Comcast's harmless delay is no reason to quash the subpoena and further delay this case.

---

[2] The seven day deadline for the ISP to effect notice was included to enforce timely compliance with the subpoena, not to protect subscriber rights.  Indeed, the subscribers get 21 days to object regardless of when the notice is sent.  Comcast, however, informed Liberty Media that it required additional time to gather subscriber information and effect notice.  Since Comcast's request was reasonable, Liberty Media elected against moving to compel strict adherence to the ISP's 7 day deadline.

## IV. DOE'S OBJECTIONS ON THE MERITS ARE PREMATURE

In paragraphs 3–4, and 7, Doe raises a number of objections that appear not to be directed to the validity of the subpoena, but rather go to the merits of Liberty Media's claim for copyright infringement. It is well settled, however, that it is premature to consider arguments on the merits, let alone affirmative defenses, before any of the defendants are named in the case. *See Achte/Neunte Boll Kino Beteiligungs GmbH & Co. v. Does 1–4,577*, 736 F.Supp.2d, 212, 215 (D.C. Cir. 2010) ("[T]he merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at this stage of the proceedings."); *Voltage Pictures, LLC*, 2011 WL 1807438, *2 ("A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information. That would deny the plaintiff access to the information critical to bringing these individual properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses."); *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d at 176 (plaintiffs "are not required to win their case in order to serve the defendants with process.").

Liberty Media has met its threshold showing that its claims for copyright infringement are "no mere fishing trip" by submitting evidence of its prima facie claim for copyright infringement, which is factually supported by the declaration testimony of its investigator, Malte Dinkela. *See London-Sire Records, LLC*, 542 F.Supp.2d at 176 ("The plaintiff need not actually prove their case at this stage; they need only present evidence adequate to allow a reasonable fact-finder to find that each element of their claim is supported."). If Doe 2 is named in suit, the he will have ample opportunity to assert his defenses regarding the prevalence of hackers and the amount of the file he downloaded, "[b]ut these are substantive defenses for a later stage." *Id.*

5

Finally, Doe's concern about the availability of proof is one that the judicial system is well equipped to solve. Liberty Media's burden is not Cartesian certainty, but rather a preponderance of the evidence as determined by the trier of fact. In the end, the jury will decide whether or not it believes his denials, given the evidence Plaintiff has martialed, and is able to martial, through the discovery process.

## V.   CONCLUSION

For the foregoing reasons, Liberty Media respectfully requests that the Court deny the pending motion to quash filed by John Doe No. 2 (D.N. 12).


Dated: July 1, 2011

Respectfully submitted,

LIBERTY MEDIA HOLDINGS, LLC

By its attorneys,

/s/ Aaron Silverstein
Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the above date, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants. A copy has also been served on Doe 2, via first-class mail at the return address that he supplied.

/s/ Aaron Silverstein
Aaron Silverstein