UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SWARM SHARING HASH FILE<br>AE340D0560129AFEE8D78CE07F2394C7B<br>5BC9C05; AND DOES 1 through 38,<br><br>    Defendants. | Civil Action No. 11-cv-10802-WGY |

**PLAINTIFF'S OPPOSITION TO DOE 15'S MOTION TO QUASH (D.N. 16)**

No one, not even the John Doe 15 who filed the present motion to quash, disputes that the plaintiff, Liberty Media Holdings, Inc. ("Liberty Media") is entitled to vindicate its copyright against the anonymous infringers who pirate its work over the BitTorrent file trading protocol. "Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interest." *Arista Records LLC v. Does 1–27*, 584 F.Supp.2d 240, 252 (D. ME 2008). Instead, Doe 15 moves to quash based on technical objections — which it has no standing to raise — and hypothetical arguments on the merits — which are premature before any defendants are named. Thus, Liberty Media respectfully requests that the Court deny the Doe 15's Motion to Quash (D.N. 16) and allow this case to move forward.

**BACKGROUND**

Liberty Media is the copyright owner for a number of adult films that are frequently pirated over the internet by use of the BitTorret peer-to-peer ("BitTorrent") protocol. Indeed, the piracy of its copyrighted works is so widespread that Liberty Media had little choice but to

1

launch a nationwide campaign of enforcement. The objective of this campaign is to prosecute current infringers in an effort to deter illegal trafficking in its films via BitTorrent and other peer-to-peer networks. It is imperative that internet infringers understand that Liberty Media not only has a legal recourse, but that it will not hesitate to assert its rights.

The John Doe defendants in the present lawsuit were all selected based on two criteria: (1) they were each caught distributing over BitTorrent the so-called AE3 Hash, which is the unique alphanumeric identifier assigned to one particular illicit copy of Plaintiff's copyrighted motion picture, and (2) they all have Internet Protocol ("IP") addresses that are traceable with publicly available information to Massachusetts. *See* Dinkela Decl., ¶¶ 20, 26.[1] This suit operates in parallel with 11-CV-10801-WGY, which is a suit against another BitTorrent swarm formed around a second illicit copy (the A3E Hash) of the same motion picture.

The Court granted Liberty Media's Motion for Early Discovery on May 11, 2011, so it could subpoena the putative defendants' Internet Service Providers ("ISPs") in order to obtain the subscriber information to identify the John Does. Under the Court's order, subscribers have 21 days from the date that notice was sent by their ISPs to object before their information is disclosed. In a demonstration of its good faith, Liberty Media has instructed Charter Communications, Inc. ("Charter"), the ISP for Doe 15, to withhold Doe 15's subscriber information until the motion to Quash is resolved.

**ARGUMENT**

The present motion to quash asserts the following arguments:

(1) Objections to Joinder;

(2) Objections based on when Charter effected notice;

---

[1] Declaration of Malte Dinkela, May 9, 2011 (D.N. 8) ("Dinkela Decl.").

    (3) Technical Objections to the Subpoena; and

    (4) Objections Based on Doe's contention that identifying anonymous infringers is somehow unduly burdensome or unfair.

Liberty Media addresses the joinder issue in great detail in Liberty Media's Opposition to Motion to Quash (D.N. 21), which was filed July 1, 2011. Thus, to streamline the briefing, it refers to and incorporates those arguments by reference into its present opposition.

Doe 15's other arguments are without merit for the reasons discussed below.

## I.    DOES WERE ALLOWED 21 DAYS TO OBJECT, SO TIMING IS NOT GROUNDS FOR OBJECTION

Pursuant to the Court's Order, "[t]he ISPs shall not respond to the Rule 45 subpoena until twenty one days after it has <u>sent</u> the Notice to each Doe defendant." *See* Order Granted Plaintiff's Emergency Ex-Parte Motion for Early Discovery, ¶ 5 (D.N. 11). Since the subscriber's deadline to object extends from the date notice was <u>sent</u>, Doe 15 is in no way prejudiced by the fact that it took Charter more than 7 days to notify him.[2] Indeed, Doe 15's subscriber information <u>has not been disclosed</u>, and will not be disclosed by Charter until the present motion to quash is resolved. Thus, Charter's harmless delay is no reason to quash the subpoena and further delay this case.

## II.    CHARTER HAS WAIVED ANY TECHNICAL OBJECTIONS TO THE SUBPOENA

The subpoena at issue is addressed to Charter, and as such, Charter is the only party with standing to raise objections regarding burdensomeness or to the technical form of the subpoena.

---

[2] The seven day deadline for the ISP to effect notice was included to enforce timely compliance with the subpoena, not to protect subscriber rights. Indeed, the subscribers get 21 days to object regardless of when the notice is sent. Charter, however, informed Liberty Media that it required additional time to gather subscriber information and effect notice. Since Charter's request was reasonable, Liberty Media elected against moving to compel strict adherence to the ISP's 7 day deadline.

3

*See West Coast Productions, Inc. v. Does 1–5,829*, _ F.Supp.2d _, 2011 WL 2292239, *6 (D.C. Cir. 2011) ("objections raised by movants, such as those based on alleged defects in the form of the subpoena or improper service, may only be raised by the ISPs themselves in an appropriate motion to quash or for a protective order."); *see also U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 18–19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.") (internal citations omitted).  Charter, however, has not moved to quash based on distance, the court of issuance, or burdensomeness, and therefore it has waived all such objections to the subpoena.

Even if Doe 15 had standing to object, the fact that Charter is located more than 100 miles from the site of production is irrelevant because Rule 45(c)(3)(ii) only prevents witnesses from having to <u>travel</u> more than 100 miles.  Witness travel, however, is not required for Charter to produce the information requested in the subpoena.  *See* Fed. R. Civ. P. 45(c)(2)(a); *U.S. Bank Nat. Ass'n*, 264 F.R.D. at 19 (declining to quash a subpoena for the production of documents more than 100 miles away because "those documents can be produced by mail" and thus require no travel, and "a majority of courts who have dealt directly with the 100-mile issue have held that such a subpoena should be enforced.") (collecting cases).

Moreover, Doe 15 has no grounds to object based on burdensomeness because the subpoena is directed to Charter, not him.  Indeed, Doe isn't required to do anything by the subpoena, let alone something that would be unduly burdensome.  *Voltage Pictures, LLC*, 2011 WL 1807438, *3 ("The plaintiff has issued subpoenas to the putative defendants' ISPs, not to the putative defendants themselves. Consequently, the putative defendants face no obligation to produce any information under the subpoenas issued to their respective ISPs and cannot claim

any hardship, let alone undue hardship"); *U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 19 (D. Me 2010) ("In addition, the bank's production of [movants] bank records for the past five years imposes no burden on *him* at all, let alone one that is undue.").

## IV.     DOE'S OBJECTIONS ON THE MERITS ARE PREMATURE

Doe 15's objections based on undue burden and "fairness" are not actually directed to the validity of the subpoena, but rather go to the merits of Liberty Media's claim for copyright infringement. It is well settled, however, that it is premature to consider arguments on the merits, let alone affirmative defenses, before any of the defendants are named in the case. *See Achte/Neunte Boll Kino Beteiligungs GmbH & Co. v. Does 1–4,577*, 736 F.Supp.2d, 212, 215 (D.C. Cir. 2010) ("[T]he merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at this stage of the proceedings."); *Voltage Pictures, LLC*, 2011 WL 1807438, *2 ("A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information. That would deny the plaintiff access to the information critical to bringing these individual properly into the lawsuit to address the merits of both the plaintiff's claim and their defenses."); *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d at 176 (plaintiffs "are not required to win their case in order to serve the defendants with process.").

Liberty Media has met its threshold showing that its claims for copyright infringement are "no mere fishing trip" by submitting evidence of its prima facie claim for copyright infringement, which is factually supported by the declaration testimony of its investigator, Malte Dinkela. *See London-Sire Records, LLC*, 542 F.Supp.2d at 176 ("The plaintiff need not actually prove their case at this stage; they need only present evidence adequate to allow a reasonable

fact-finder to find that each element of their claim is supported."). If Doe 15 is named in suit, the he will have ample opportunity to assert his defenses regarding the accuracy of the data and the sufficiency of the investigate techniques, "[b]ut these are substantive defenses for a later stage." *Id.*

Moreover, Doe 15's concern that his unmasking may be embarrassing is no reason to quash the subpoena or deny Liberty Media its right to prosecute copyright infringers. "Courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' [at issue] is the alleged infringement of copyrights." *West Coast Productions, Inc.*, 2011 WL 2292239, *2 (internal citations omitted). Liberty Media is sensitive to the fact that allegations of infringing gay pornography may be embarrassing to some defendants, but embarrassment alone is not a reason to overcome the public's interest in open and transparent litigation. And even if any defendant suffers from a particularly precarious circumstance, the appropriate recourse is not to flatly prevent Liberty Media for asserting a valid claim. *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm . . . . The risk that a plaintiff may suffer some embarrassment is not enough."); *West Coast Productions, Inc.*, 2011 WL 2292239 at *2 (denying requests proceed anonymously in a BitTorrent suit).

Finally, Doe's concern about the availability of proof is one that the judicial system is well equipped to solve. It is worth noting that Doe 15 does not <u>deny</u> the allegations, even rhetorically, but rather hides behind bald proclamations regarding what Liberty Media will and will not be able to prove. In the end, the jury will decide whether or not it believes Doe 15's

denials, given the evidence Plaintiff has martialed, and is able to martial, through the discovery process.

## V.   CONCLUSION

For the foregoing reasons, Liberty Media respectfully requests that the Court deny the pending motion to quash filed by John Doe No. 15 (D.N. 16).

Dated: July 6, 2011

Respectfully submitted,

LIBERTY MEDIA HOLDINGS, LLC

By its attorneys,

/s/ Aaron Silverstein
Aaron Silverstein, Esq.
(BBO #660716)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
P: 978-463-9100
F: 978-463-9109
E: asilverstein@massiplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the above date, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants. A copy has also been served on Doe 2, via first-class mail at the return address that he supplied.

/s/ Aaron Silverstein
Aaron Silverstein