```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


_____
                                     )
LIBERTY MEDIA HOLDINGS, LLC,         )
               Plaintiff,            )
                                     )    CIVIL ACTION
          v.                         )    NO. 11-10802-WGY
                                     )
SWARM SHARING HASH FILE              )
AE340D0560129AFEE8D78CE07F2394C7     )
B5BC9C05; and DOES 1 through 38,     )
                Defendants.          )
_____)
```

MEMORANDUM

YOUNG, D.J.                                          October 31, 2011

**I.   INTRODUCTION**

The plaintiff, Liberty Media Holdings, LLC ("Liberty Media"), alleges that thirty-eight defendants, identified only by their Internet Protocol addresses ("IP addresses"), infringed upon its copyrighted motion picture, "Corbin Fisher Amateur College Men Down on the Farm" (the "Motion Picture"), by reproducing and widely distributing the Motion Picture over the Internet.  In order to obtain the identities of the thirty-eight unknown defendants, Liberty Media subpoenaed the Internet Service Providers ("ISPs") associated with the defendants' IP addresses.  Three of the defendants moved to quash the subpoenas on the grounds of failure to establish a prima facie case of copyright infringement, procedural defects with the subpoenas, and improper joinder.

## II.     PROCEDURAL HISTORY

On May 6, 2011, Liberty Media brought this action for copyright infringement against thirty-eight unknown defendants pursuant to 17 U.S.C. § 501.  Compl., ECF No. 1.  Because the alleged infringement occurred over the Internet, the only identifying information available to Liberty Media when it filed the complaint was the IP addresses of the alleged infringers. Id. ¶ 10.  As a result, Liberty Media listed the defendants separately as "Defendant Doe 1" through "Defendant Doe 38" (collectively "Does 1-38"), and distinguished them by their unique IP addresses.  See id. ¶¶ 18-131.

On May 9, 2011, in an effort to uncover the identities of Does 1-38, Liberty Media filed an ex parte motion for early discovery to subpoena the ISPs that were servicing the allegedly infringing IP addresses.  Pl.'s Emergency Ex-Parte Mot. Early Disc., ECF No. 6.  The Court granted the motion on May 10, 2011, authorizing the ISPs to disclose the subscriber information for the unknown defendants to whom they provided service, after notifying the subscriber of the subpoena.  Order, ECF No. 11. Subscribers were permitted twenty-one days after receipt of notice from their ISP to challenge the subpoena.  See id., App. A, ECF No. 11-1.  If they failed to file a motion to quash or vacate the subpoena within twenty-one days, their names would be disclosed to Liberty Media.  Id.

After receiving notice from their ISPs of the subpoenas, three defendants filed motions to quash.  Defendant Doe 2, the user of IP address 66.30.115.104 ("Doe 2"), filed a motion to quash the subpoena on June 17, 2011.  Mot. Quash Subpoena ("Doe 2's Mot."), ECF No. 12.  Another defendant also using the pseudonym "John Doe," but not identifying his IP address ("Unnumbered Doe"),[1] filed a motion to quash the subpoena on June 21, 2011.  Mot. Quash Subpoena ("Unnumbered Doe's Mot."), ECF No. 13.  Defendant Doe 15 ("Doe 15"), who, like Doe 2, has not identified his IP address, filed a motion to quash the subpoena on June 24, 2011.  Mot. Quash Subpoena ("Doe 15's Mot."), ECF No. 16.  Doe 2, Unnumbered Doe, and Doe 15 collectively are referred to as "the moving defendants."

On July 22, 2011, this Court issued an order denying the motions to quash.  Order, ECF No. 26.  This memorandum explains the Court's reasoning.  It bears noting that as of the date of this memorandum, Liberty Media has voluntarily dismissed the following defendants from the action: Does Nos. 1, 2, 4, 5, 6, 9, 11, 13, 16, 19, 21, 23, 24, 26, 27, 32, and 37.  See Notice Dismissal, ECF Nos. 14, 17-19, 25, 28-30, 33-39, 44, 45.

---

[1] Unnumbered Doe did not indicate, in its motion to quash, its IP address or the "Defendant Doe" number associated with it.  The Court will herein refer to the defendant as "Unnumbered Doe."

## III. FACTS AS ALLEGED

Liberty Media is the registered owner of the copyright to numerous adult films, including the Motion Picture.[2] Compl. ¶ 1. The Motion Picture is easily discernable as a professional work and is marked with Liberty Media's trademark, a copyright notice,

---

[2] It is undisputed that Liberty Media is a distributor of lawful, albeit hardcore, pornography, and the Motion Picture is itself hardcore pornography. Notably, it is a matter of first impression in the First Circuit, and indeed is unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement. Copyright protection in the United States was "effectively unavailable for pornography" until the landmark decision by the Fifth Circuit in Mitchell Brothers Film Group v. Cinema Adult Theater, 604 F.2d 852, 854-55, 858 (5th Cir. 1979) (holding that the Copyright Act neither explicitly nor implicitly prohibits protection of "obscene materials," such as the films at issue there, and rejecting the defendant's affirmative defense of "unclean hands"). See also Jartech, Inc. v. Clancy, 666 F.2d 403, 406 (9th Cir. 1982) (stating, in the context of copyright infringement of a pornographic film, that "[p]ragmatism further compels a rejection of an obscenity defense" because "obscenity is a community standard which may vary to the extent that controls thereof may be dropped by a state altogether"). Compare Devils Films, Inc. v. Nectar Video, 29 F. Supp. 2d 174, 175-77 (S.D.N.Y. 1998) (refusing to exercise its equitable powers to issue a preliminary injunction against infringement of pornographic films and "commit the resources of the United States Marshal's Service to support the operation of plaintiff's pornography business," holding that the films were "obscene" and illegally distributed through interstate commerce), with Nova Prods., Inc. v. Kisma Video, Inc., Nos. 02 Civ. 3850(HB), 02 Civ. 6277(HB), 03 Civ. 3379(HB), 2004 WL 2754685, at *3 (S.D.N.Y. Dec. 1, 2004) (holding that the question of whether particular pornographic films are "obscene" is one of fact for the jury, and that, even were the films deemed to be obscene, it would not prevent their protection under a valid copyright) (citing Jartech, Inc., 666 F.2d 403; Mitchell Bros., 604 F.2d 852). Congress has never addressed the issue by amendment to the Copyright Act. See Ann Bartow, Pornography, Coercion, and Copyright Law 2.0, 10 Vand. J. Ent. & Tech. L 799, 833 (2008). This issue, however, is not presently before the Court and the Court expresses no opinion on it here.

4

and a warning that unauthorized copying is illegal and will be prosecuted.  Id. ¶¶ 143-144.  Without Liberty Media's authorization, Does 1-38 acted collectively to reproduce and distribute the Motion Picture over the Internet using the BitTorrent file transfer protocol ("BitTorrent").  Id. ¶ 2.

BitTorrent is a peer-to-peer file-sharing protocol used for the distribution and sharing of data over the Internet, including files containing digital versions of motion pictures.  Id. ¶ 132; Decl. Malte Dinkela ("Dinkela Decl.") ¶ 8, ECF No. 8.  BitTorrent is different from traditional peer-to-peer networks in that it organizes all users who wish to download a particular file into a collective distribution network, known as a "swarm."  Compl. ¶ 132; Dinkela Decl. ¶ 8.  Being part of a swarm allows users to simultaneously download and upload pieces of the media file from each other, rather than download the entire file from a single source.  Compl. ¶ 132; Dinkela Decl. ¶ 8.

File sharing through the BitTorrent network begins with a single individual, often referred to as a "seed" user or "seeder," who intentionally chooses to share a particular file with a BitTorrent swarm.  Compl. ¶ 137; Dinkela Decl. ¶ 13.  The original file in this case contains the entire Motion Picture.  Compl. ¶ 137; Dinkela Decl. ¶ 13.  Once the file has been shared by the seed user, other members of the swarm can download the original file, which creates an exact digital copy on the

computers of the downloading users. Compl. ¶ 138; Dinkela Decl. ¶ 14. Each user requesting to download the file becomes a member of the swarm and consequently receives pieces of the original file. Compl. ¶ 138; Dinkela Decl. ¶ 14. Eventually, the entire file is broken into pieces and distributed to various members of the swarm who may then "reassemble" the file by exchanging pieces with one another. Compl. ¶ 138; Dinkela Decl. ¶ 14. Once a piece of the file is downloaded, it is immediately made available for distribution to other users seeking to download the file, subsequently turning each downloader into an uploader. Compl. ¶ 139; Dinkela Decl. ¶ 15. This sequence leads to the "rapid viral sharing" of the file. Compl. ¶¶ 140-141; Dinkela Decl. ¶¶ 16-17.

Does 1-38 collectively participated in a peer-to-peer swarm to download, copy, and distribute the Motion Picture file, whose hash code is known as "the AE3 Hash." Compl. ¶¶ 147, 149; Dinkela Decl. ¶¶ 19-21, 26. After searching for and obtaining a torrent file containing information sufficient to locate and download the Motion Picture, each defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such files. Compl. ¶¶ 148, 154-155. Does 1-38 then traded pieces of the file containing a digital copy of the Motion Picture with each other until each user had a partial or complete copy of the Motion Picture on his or her computer. <u>Id.</u> ¶ 157. Each defendant owns or has control of a computer that

contained (and possibly still contains) a torrent file identifying the Motion Picture, as well as a partial or complete copy of the Motion Picture itself.  Id. ¶ 150.

## IV. ANALYSIS

### A. Motions to Quash

Pursuant to Federal Rule of Civil Procedure 45, a court must quash or modify a subpoena if it

> (i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person . . . ; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A).  The moving defendants raise three main arguments in their motions to quash.  First, the moving defendants claim that Liberty Media has produced insufficient evidence to support a prima facie case of copyright infringement.  Second, they allege procedural defects in the issuance and service of the subpoenas.  Third, the moving defendants argue that joinder of the thirty-eight anonymous defendants was improper.  The Court will address each argument in turn.

#### 1. Prima Facie Claim

Unnumbered Doe and Doe 15 argue that Liberty Media has not produced sufficient evidence to establish a prima facie case of copyright infringement against them.  See Unnumbered Doe's Mot.

4; Doe 15's Mot. 4. Specifically, they argue that the claims of infringement are too "generalized" to sufficiently allege liability for each individual defendant, Unnumbered Doe's Mot. 4, and that the accuracy of the evidence underlying the claim is "tenuous and unsubstantiated," Doe 15's Mot. 4.

In order to establish a claim for copyright infringement, Liberty Media must show that it holds a valid copyright and that the moving defendants violated one of their exclusive rights as the copyright owner. London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 165 (D. Mass. 2008) (Gertner, J.); see 17 U.S.C. § 501. Liberty Media has produced sufficient evidence as to both these requirements to establish a prima facie claim. Liberty Media has shown that it holds a valid copyright to the Motion Picture, see Compl., Ex. 1, Certificate of Registration, ECF No. 1-1, and the copyright is not disputed here. Moreover, Liberty Media's investigator, Malte Dinkela, has demonstrated that Does 1-38 violated Liberty Media's exclusive right as the copyright owner to reproduce and distribute the copyrighted material.

Dinkela determined that Liberty Media's copyrighted work was available for download and distribution on the BitTorrent network at the time of the alleged infringements and that it continues to be available there today. Dinkela Decl. ¶¶ 26-27. Dinkela stated that, as of January 31, 2011, he had identified at least thirty-eight unique IP addresses traceable to Massachusetts

(those of Does 1-38) that had engaged in the unauthorized downloading and distribution of the AE3 Hash associated with the Motion Picture file.  Id. ¶ 26.  Dinkela was able to identify when the file (or part of the file) was distributed by the BitTorrent network user, the IP address associated with each user, and the ISP to which each IP address was linked.  Id. ¶¶ 23, 31.  As BitTorrent users, Does 1-38 allegedly took all necessary steps for a public distribution: by participating in the unauthorized download and distribution of the Motion Picture file as members of the swarm, they infringed on Liberty Media's copyrighted material.

London-Sire Records, a decision from this district, is instructive as to the moving defendants' claim that the evidence is not sufficiently particularized to allege infringement.  In London-Sire Records, the plaintiffs alleged that the defendants were connected to a peer-to-peer network that allowed users to make copies of the plaintiffs' copyrighted material, and produced evidence demonstrating that this material was in fact available for download over the Internet.  542 F. Supp. 2d at 169.  The court held that the plaintiffs sufficiently pled infringement through actual distribution and provided sufficient evidence in support of their allegations.  Id.  The court stated that "where [a] defendant has completed all the necessary steps for a public distribution, a reasonable fact-finder may infer that the

distribution actually took place."  Id.

Liberty Media has provided sufficient evidence that its copyrighted material was available for download and distribution on the BitTorrent network, and that the material was subsequently downloaded and distributed by a swarm of at least thirty-eight users, which may include the moving defendants.  As such, Liberty Media has established a prima facie claim for copyright infringement.

### 2. Procedural Defects with the Subpoenas

Doe 15 and Doe 2 raise procedural objections to the subpoenas that Liberty Media served on the ISPs, see Doe 15's Mot. 1-2; Doe 2's Mot. 3, following this Court's order authorizing early discovery, see Order 1.  Doe 15 and Doe 2 argue that the subpoenas issued to their ISPs did not allow a reasonable time for compliance.  Doe 15's Mot. 1; Doe 2's Mot. 3.  Doe 15 further argues that the subpoena served on his ISP was not issued from the proper district court.  Doe 15's Mot. 2.

The Court need not reach the merits of these arguments as the subpoenas at issue were served on the ISPs, not Doe 15 and Doe 2.  As such, Doe 15 and Doe 2 lack standing to raise procedural objections.  See West Coast Prods., Inc. v. Does 1-5829, 275 F.R.D. 9, 16 (D.D.C. 2011) (holding that procedural objections to subpoenas issued to the defendants' ISPs must be raised by the ISPs themselves, rather than the defendants);

10

United States Bank Nat'l Ass'n v. James, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997))). The exception for claims of privilege does not apply here as the moving defendants have not asserted (nor could they viably assert)[3] any claim of privilege relating to the requested information.

Doe 15 further argues that the subpoena places an undue burden on the defendants in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv).  Doe 15's Mot. 3.  Doe 15 specifically argues that he is subjected to an undue burden in being the target of this action, an action in which Doe 15 asserts there is a "substantial likelihood" that Liberty Media will not be able to establish liability against him.  Id.

Doe 15's argument misconstrues the protective reach of

---

[3] As explained by the district court in First Time Videos, LLC v. Does 1-500, No. 10 C 6254, 2011 WL 3498227, at *5 (N.D. Ill. Aug. 9, 2011), "[i]nternet subscribers do not have a reasonable expectation of privacy in their subscriber information - including name, address, phone number, and email address - as they have already conveyed such information to theirs ISPs." Similarly, Third Degree Films, Inc. v. DOES 1-2010, Civil No. 4:11 MC 2, 2011 WL 4759283, at *3 (N.D. Ind. Oct. 6, 2011) (citing First Time Videos, 2011 WL 3498227, at *4), held that because "[i]nternet subscribers share their information to set up their internet accounts," the subscribers "cannot proceed to assert a privacy interest over the same information they chose to disclose."

Federal Rule of Civil Procedure 45(c)(3)(A)(iv).  Rule 45 protects those persons <u>subject to a subpoena</u> from any resulting undue burden or expense, Fed. R. Civ. P. 45(c)(3)(A)(iv), and imposes sanctions on serving parties who fail to take the reasonable steps to avoid such a burden, Fed. R. Civ. P. 45(c)(1).  The subpoenas at issue compel the various ISPs to produce subscriber information for the IP addresses of Does 1-38; this imposes no burden on either the moving defendants or any of Does 1-38.[4]  See <u>United States Bank Nat'l Ass'n</u>, 264 F.R.D. at 19 ("The defendant's argument based on 'undue burden' is also not an appropriate basis for granting a motion to quash a subpoena.  In addition, the [third party's] production of [requested documents] imposes no burden on [the defendant] at all, let alone one that is undue.") (footnote omitted).  Therefore, Doe 15's undue burden argument is unavailing.

### 3. Joinder of the Thirty-Eight Defendants

The moving defendants claim that joinder of Does 1-38 is improper[5] and "denies individual justice to those being sued."

---

[4] If there was an undue burden, it would fall upon the ISPs. As of the date of this memorandum, none of the ISPs has moved to quash the subpoena on the ground of undue burden, or indeed on any ground.  In fact, one ISP, RCN, had already complied with the subpoena by the date the present motions were filed.  See Pl.'s Opp'n Mot. Quash 3 n.2, ECF No. 21.

[5] It bears noting that the appropriate remedy for improper joinder is to sever the parties, not quash the subpoenas.  See Fed. R. Civ. P. 21; <u>Sony Music Entm't Inc.</u> v. <u>Does 1-40</u>, 326 F.

Unnumbered Doe's Mot. 1-4; see also Doe 2's Mot. 3 ¶ 8; Doe 15's Mot. 3.  There are two requirements under Federal Rule of Civil Procedure 20 for permissive joinder.  First, the right to relief asserted against the defendants must arise out of the same transaction, occurrence, or series of transactions or occurrences.  Fed. R. Civ. P. 20(a)(2).  Second, there must be questions of law or fact common to the defendants.  Id.  The present case meets both of these requirements; therefore, joinder of the defendants is proper, at least at this stage of the litigation.[6]

As to the first requirement, Liberty Media has alleged that Does 1-38 were part of a BitTorrent swarm that infringed upon Liberty Media's rights by collectively downloading and distributing its copyrighted Motion Picture file.  Compl. ¶¶ 147-158.  Liberty Media asserts:

> Unlike traditional peer-to-peer networks, which broker a 1-to-1 connection between an uploader and a downloader,

---

Supp. 2d 556, 568 (S.D.N.Y. 2004).  As such, the moving defendants' joinder argument ought have been made in a motion for severance.  Nevertheless, the Court has considered and now rejects the moving defendants' claim as to improper joinder at this stage of the litigation.

[6] That is not to say that any of Does 1-38 are precluded from identifying factual differences that would merit severance from the other defendants at a later stage.  Such distinctions will not become clear, however, until after discovery, and "[p]rospective factual distinctions . . . will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation."  First Time Videos, 2011 WL 3498227, at *10.

>    a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, and where a group of uploaders collaborate to speed the completion of each download of the file.

Pl.'s Opp'n Mot. Quash 8, ECF No. 21.  This is sufficient to satisfy the "same transaction or occurrence" requirement of permissive joinder.

As to the second requirement, common questions of law exist in that the claims asserted against Does 1-38 are identical.  See Compl. ¶¶ 159-176.  Moreover, because Liberty Media alleges use of the BitTorrent protocol in infringing its copyright, the factual inquiry into the method of infringement will be the same as to each of Does 1-38.  While the Court acknowledges that certain defendants may later present different factual circumstances to support individual legal defenses, at this stage in the litigation, joinder is proper based on the common questions of law and fact identified above.

The Court is not alone in holding that a BitTorrent swarm case warrants joinder of the swarm participants.  In West Coast Productions, a D.C. district court entertained a claim of misjoinder similar to the claim asserted by the moving defendants.  275 F.R.D. 9.  The court found that the plaintiff satisfied the "same transaction or occurrence" requirement of permissive joinder by alleging that the 5,829 defendants participated in a BitTorrent swarm where the plaintiff's copyrighted film was unlawfully shared, downloaded, and

14

distributed.  Id. at 15-16.  The court concluded that the second requirement of permissive joinder was also satisfied because all the claims asserted against the defendants were identical, therefore raising common questions of law.  Id. at 16.  Other courts have reached the same result.  See, e.g., MGCIP v. Does 1-316, No. 10 C 6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011) ("[G]iven the decentralized nature of BitTorrent's file-sharing protocol - where individual users distribute the same work's data directly to one another without going through a central server - the Court finds that sufficient facts have been pled to support the joinder of the putative defendants at this time."); Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) ("Each putative defendant is a possible source for the plaintiffs' motion pictures, and may be responsible for distributing the motion pictures to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.") (citation omitted).  The Court therefore rejects the moving defendants' improper joinder claim at this stage of the litigation.

    **B.   Proceeding Anonymously Using Pseudonyms**

In the proceedings to date, Liberty Media has named the defendants using the pseudonyms "John Does 1-38" because there was no identifying information available at the time the complaint was filed beyond the IP address of each defendant.

15

Compl. ¶ 10. Liberty Media now argues that the moving defendants should be prohibited from proceeding anonymously because anonymity violates the letter and spirit of Federal Rule of Civil Procedure 11. Pl.'s Opp'n Mot. Quash 5. Rule 11 requires that "[e]very pleading, written motion, and other paper . . . must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. 11(a). Unnumbered Doe and Doe 15 argue that their anonymity should be protected because of the risk of coerced settlement and the public humiliation that may follow allegations of infringing hardcore pornography. See Unnumbered Doe's Mot. 7-8; Doe 15's Mot. 3.

While there is no case law directly on point in the First Circuit, the Superior Court of Massachusetts has dealt with this issue in the context of an action for declaratory judgment and breach of privacy. In Roe v. General Hospital Corp., Civil Action No. 11-991-BLS1, 2011 WL 2342737, at *1 (Mass. Super. Ct. May 19, 2011) (Lauriat, J.), the court stated that the proponent bears the burden of demonstrating the need to proceed anonymously, and that relief will be granted only in exceptional circumstances. The court held that determining whether a litigant may proceed anonymously requires balancing the "litigant's substantial right to privacy" with the "constitutionally embedded presumption of openness in judicial proceedings," noting that circumstances such as economic harm or

mere embarrassment will not suffice to overcome the public's interest in disclosure.  Id. (citations omitted).

In West Coast Productions, the D.C. district court stated that the Federal Rules "require that persons filing papers in this Court identify themselves in their papers."  275 F.R.D. at 12.  There, the defendants requested to proceed anonymously so that the plaintiff would be prevented from obtaining their contact information and using that information to target them for the alleged infringement at issue.  Id. at 12-13.  The court held that the defendants could not proceed anonymously because their privacy interest in their identifying information was minimal and not significant enough to allow anonymous filing.  Id. at 13.

Unnumbered Doe suggests that Liberty Media sought the public identities of Does 1-38 to coerce pretrial settlements. Unnumbered Doe's Mot. 7 ("While we cannot know for certain how the Plaintiff intends to proceed . . . the likely course of action is to contact each of the individuals and demand a monetary payment for settlement of the claims in question."). This allegation is not supported in the motion papers or by Liberty Media's actions to date.  It is purely speculative and not grounds for allowing the moving defendants to proceed anonymously.[7]

---

[7] The Court acknowledges that since its Order dated July 22, 2011, seventeen of the thirty-eight defendants have been voluntarily dismissed from this case, presumably as a result of

17

Unnumbered Doe further argues that the anonymity of Does 1-38 should be protected because the disclosure of their identities in conjunction with this lawsuit, which involves homosexual pornography, may cause reputational harm and intrusion upon their privacy.  Id.  Unnumbered Doe asserts that being named as a party to this action amounts to "a public accusation" that the defendants downloaded and viewed homosexual pornography.  Id. Doe 15 similarly argues that their public identification in the lawsuit will expose the defendants to "intrusive public scorn." Doe 15's Mot. 3.

The potential embarrassment to Does 1-38 of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously.  As the Superior Court of Massachusetts stated, "mere embarrassment [is] not sufficient to override the strong public interest in disclosure." Roe, 2011 WL 2342737, at *1.  Thus, the potential embarrassment or social stigma that Does 1-38 may face once their identities are released in connection with this lawsuit is not grounds for

---

settlement.  The mere fact that such settlement occurred, however, does not prove that Unnumbered Doe's allegation was correct that Liberty Media sought disclosure of the defendants' identities solely to force a settlement.  Rather, Liberty Media may simply have validly vindicated its legitimate interest in the "openness of judicial proceedings."  Roe, 2011 WL 2342737, at *1.

18

allowing them to proceed anonymously.[8]

**V.   CONCLUSION**

For the foregoing reasons, the Court, in its Order dated July 22, 2011, DENIED the moving defendants' motions to quash the subpoenas served by Liberty Media on their ISPs.  Furthermore, the Court ordered that Does 1-38 are prohibited from proceeding any further in this action using pseudonyms, subject to

---

[8] The Court acknowledges that publicly identifying an individual as a homosexual may fall within the recognized exceptions to the general proposition that all parties to a lawsuit be named in the pleadings.  See, e.g., Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) ("Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'" (citing Doe v. Morrisville, 130 F.R.D. 612, 614 (E.D. Pa. 1990))); West Coast Prods., 275 F.R.D. at 12-13 ("Where the issues involved are matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." (quoting Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712-13 (5th Cir. 1979)) (quotation marks omitted)). This case, which involves the alleged infringement of homosexual pornography, only creates an innuendo as to the defendants' sexual orientation.  Nevertheless, should individual defendants be concerned about being publicly "outed" as discovery proceeds, the Court will entertain those arguments on an individual basis. The Court presently expresses no opinion on whether homosexuality continues to be a protected privacy interest warranting anonymity.  If such a privacy interest exists, the Court will be careful to draw a line between the "mere embarrassment" of being publicly named in a lawsuit involving hardcore pornography, which does not provide a basis for anonymity, and concern over the exposure of one's sexual orientation.  The Court presently declines, however, to grant anonymity to all of the defendants based on the generalized concerns of public scorn expressed by only two of the thirty-eight defendants.

individual motions to proceed anonymously on the basis of privacy interests.

                                             /s/ William G. Young
                                             WILLIAM G. YOUNG
                                             DISTRICT JUDGE