UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SWARM SHARING HASH FILE AE340D0560129AFEE8D78CE07F2394C7B5BC9C05 AND COMPRISING MICHAEL RAPISARDA, JEREMY MARRON, TIM ZOLLER, PHILIP PIRELLO, THEODORE WARNER, JOHN DOE 15, MARK PACKARD, TIM GRANGER, THA CHANH, AVANT PAVIDAPHA, KYLE BORAN, LARRY SON, SHANNON LYONS, AND JOHN DOES 39-51,<br><br>Defendants. | Civil Action No. 11-cv-10802-WGY<br><br><br>**JURY TRIAL DEMANDED** |

**OPPOSITION TO SECOND EMERGENCY MOTION FOR PROTECTIVE ORDER
AND SECOND EMERGENCY MOTION FOR STAY OF DEPOSITION**

The plaintiff, Liberty Media Holdings LLC ("Liberty") requests that the Court deny the Second Emergency Motion for Protective Order and the Second Emergency Motion for Stay of Deposition filed by Jeffrey Menard ("Menard"). Liberty has acted in good faith on the Court's May 11, 2011, Early Discovery Order to seek limited discovery to evaluate the threshold issue of whether Menard is a proper defendant, or whether he is the victim of mistaken identity as he claims. The limited discovery Liberty proposes is designed to eliminate Menard as a defendant if he is indeed telling the truth, and it is less invasive and burdensome than the alternative, which is to name Menard in the complaint and seek full discovery under the Federal Rules. Thus, Liberty requests that the Court allow Liberty to serve the Subpoena attached as Exhibit A and take the limited discovery contemplated therein.

1

In the alternative, should the Court deem that naming Menard and proceeding with full discovery would be preferable, Liberty requests that the Court allow it explore Menard's mistaken identity defense without unwarranted threats of attorneys' fees under 17 U.S.C. § 505 should Liberty determine that there is merit to his mistaken identity defense.

**I.      BACKGROUND**

On May 11, 2011, the Court granted Liberty's motion for expedited discovery.  While the primary purpose of this motion was to allow Liberty to subpoena the John Doe subscriber information from the internet service providers, Liberty also requested the ability to "serve additional limited discovery on a Doe defendant, once identified, for the sole purpose of ascertaining whether the individual identified is a proper defendant in the case."  Liberty included this particular request to give it the procedural tools to evaluate claims of "mistaken identity," which it would almost certainly receive.  The Court granted that request, authorizing limited additional discovery where appropriate.

Pursuant to that order, Liberty subpoenaed the records for the Internet Protocol ("IP) addresses used by Does 1–38 from their respective internet service providers ("ISPs").  The responses to these subpoenas disclosed the names and contact information for the subscribers on record with the ISPs.

The identified subscriber, however, is not necessarily the individual who infringed Liberty's copyright, as other individuals may have access to that subscriber's internet connection.  Thus, once Liberty received the subscriber information, it conducted a good faith investigation to determine whether there was a credible reason to believe that the subscriber was responsible for the infringement, or whether there was reason to believe that some other individual was really the "John Doe" who infringed Liberty's copyright.

During the course of its good faith investigation, Liberty eliminated numerous subscribers from the complaint, either through settlement or its independent determination that naming the subscriber to the lawsuit would not be appropriate. Many subscribers, however, ignored Liberty's inquiries, so it has little choice but to proceed formally against them. In total, Liberty eliminated 25 Does, eventually naming 12 Does in the First Amended Complaint, which was filed on January 23, 2012.

Menard, however, presented a special circumstance. The subpoena response from Charter identified Menard as the internet subscriber who was assigned the IP address used by Doe 15. Through counsel, however, Menard vehemently denied that he downloaded Liberty's motion picture, and has gone so far as to sign a declaration to that effect. Menard also refused to cooperate with Liberty by either substantiating his bald denial or by identifying the individual who he alleges was responsible for the infringement.

Menard's refusal to cooperate appears to be due to strategic gamesmanship. He appears to be under the mistaken belief that he would be entitled to attorneys' fees should Liberty name him as a defendant, but then be required to voluntarily withdraw the claim because his mistaken identity defense checks out in discovery.

Liberty, however, sought to investigate Menard's defense by employing the limited discovery authorized by the May 11 Order. Thus, it initially served a Notice of Deposition[1] on Menard to attend a deposition on October 24, 2011. Menard objected to this Notice of Deposition, and requested that the court "issue a Protective Order declaring that Deponent is not

---

[1] Liberty concedes that it mistakenly served this a Notice of Deposition, which is not a procedurally proper way to seek the deposition of a non-party. Had counsel for Menard met and conferred on that issue, Liberty would have withdrawn the Notice of Deposition, and replaced it with a served subpoena. Counsel for Menard, however, filed the motion for a protective order without conferring on that issue. The motion was granted before Liberty could oppose, at which time the issue became moot.

required to attend any deposition, nor to produce any documents for plaintiff's inspection, on October 24, 2011," which the Court granted on October 20, 2011.

The parties, however, disagree over the scope of the Court's October 20, 2011 Order. Menard has taken the position that it forecloses any additional discovery before Menard is named as a defendant. It is Liberty's position that the Court's Order only prevented the October 24 deposition, and that it does not foreclose a properly served third-party subpoena on Menard under the May 11, 2011 Order. The parties were unable to reach any agreement or compromise on this issue. (The parties did, however, compromise that should the Court allow the subpoenaed deposition to go forward, it would take place at the offices of counsel for Menard.)

Liberty has thus prepared a subpoena, attached hereto as Exhibit A, seeking a deposition and limited document discovery on Menard. Counsel for Menard refused to accept service on his client's behalf, and thus Liberty's subpoena is awaiting service. Notably, Liberty did not provide Menard with an advance copy of the subpoena, so many of the positions Menard takes in his present motion are based on little more than speculation.

## II. ARGUMENT

### A. Liberty's Subpoena Is in Compliance with the Court's May 11 and October 20 Orders

As the Court is aware, there are significant practical problems in identifying anonymous internet copyright infringers. Thus, in addition to the ISP subpoenas, Liberty sought, and the Court granted, some flexibility to "serve additional limited discovery on a Doe defendant, once identified, for the sole purpose of ascertaining whether the individual identifies is a proper defendant in the case." *See* Order Granting Early Discovery, D.N. 11, ¶ 6.

Indeed, Liberty specifically sought this provision in the Early Discovery Order to give it the tools necessary to test the "mistaken identity" defense, such as that raised by Menard. *See*

4

Plaintiff's Memorandum Re: Motion for Early Discovery, p.5 ("Additionally, the Internet subscriber is not always the proper defendant in actions such as this.  Liberty therefore seeks to depose and/or issue interrogatories to the Internet Subscriber identified by each ISP in order to determine whether or not they are the proper defendant in this action.").

Moreover, Liberty's subpoena to Menard does not run afoul of the Court's Protective Order of October 20, 2011.  In that Order, the Court granted the relief request in Menard's motion, which, at its broadest reading, was limited to "issuing a Protective Order declaring that Deponent is not required to attend any deposition, nor to produce any documents for plaintiff's inspection, on October 24, 2011."  *See* Motion for Protective Order (D.N. 42).  Notably, the protective order sought by Menard did not request a blanket prohibition on additional early discovery, nor did it seek to rescind Paragraph 6 of the May 11 Early Discovery Order.  Thus, the October 20 Order only prevented the deposition noticed for October 24; it did not foreclose Liberty from properly serving a subpoena for the limited discovery contemplated by the May 11 Order.

### B. The Limited Third-Party Subpoena Proposed by Liberty Is The Best Solution to Determine Whether Menard Is a Proper Defendant

Liberty's proposed limited discovery is the most efficient and least invasive means to determine whether it is proper to name Menard in suit, or whether Liberty should name a third-party with access to his internet connection.  Menard has evoked the mistaken identity defense to explain why he was identified by the ISP in conjunction with Doe 15's infringement.  Liberty, of course, is not required to take his word for it, but it has exhausted all other means available to test Menard's credibility.

Liberty thus proposes using the flexibility granted by the May 11 Order to take focused discovery designed primarily to rule Menard out, should he be telling the truth.  The simple,

5

inescapable fact is that Menard is the only individual that Liberty can identify with any information regarding Doe 15's infringement. Thus, he is going to have to answer Liberty's questions, either through the limited pre-suit discovery proposed by Liberty or through full-blown discovery after the Rule 26(f) conference. It is in both parties' interests to resolve the threshold identity issue before the issue is joined in earnest.

Contrary to Menard's claims, Liberty's proposed limited discovery is not a "fishing expedition." To use the analogy, Menard is already "caught," and the preliminary discovery is sought determine whether there is reason to let him off the hook.

The limited materials requested by Liberty are reasonably calculated to rule Menard out if he is telling the truth. The objective is to determine whether the computer hardware owned by Menard was used to conduct the infringement, either through locating evidence of the infringing file, or by comparing the Media Access Control ("MAC") Addresses for the computer hardware with those on file with his ISP. The information regarding his computer purchase history is also critical to see if Menard has replaced the computer hardware used to infringe.

Indeed, if anything, Liberty's proposed discovery will be less invasive to Menard's privacy than the alternative, which will be full-blown discovery once he is named as a defendant. Liberty has also offered to consider everything learned through limited discovery to be confidential until the Court issues a protective order in the case. *See* Ex. A, Subpoena at Schedule A.

    **C.**    **In the Alternative, Liberty Requests that It be Able to Explore the Mistaken Identity Defense without Meritless Threats of Prevailing Party Attorney's Fees**

Should the Court determine that it is in the interest of the case for Liberty to test Menard's mistaken identity defense after he is named as a defendant, Liberty respectfully

requests that the Court grant it a safe harbor — where it can take the discovery it needs to determine whether Menard is directly liable for copyright infringement — without having to defend meritless requests for attorney's fees should it determine that Menard is not directly responsible for the infringement.

One would ordinarily expect that the parties' interests would be aligned in making a preliminary determination regarding the merits of a mistaken identity defense. The plaintiff does not want to waste time and effort suing the wrong person, and the putative defendant does not want to be sued for the wrongdoing of someone else.

Menard's refusal to cooperate, however, appears to be a strategic decision based on his mistaken belief that he would be entitled to attorneys' fees as the "prevailing party" should the copyright infringement claim be voluntarily withdrawn after he is named to the complaint. This position is in error because a voluntary dismissal would not constitute "prevailing on the merits of any claim," which is required for 17 U.S.C. § 505. *See Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 164–165 (1st Cir. 2007) (holding that a party must prevail on the merits to be a "prevailing party" for the purpose of 17 U.S.C. § 505); *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009) (voluntary dismissal without prejudice not a determination on the merits for the purposes of 17 U.S.C. § 505). In addition, it would be entirely inequitable to reward Menard for his gamesmanship. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (the award of attorneys' fees to the prevailing party is entirely within the discretion of the court).

**D.     There Is No Cause to Dismiss Doe 15 From the Case**

In addition, there are no grounds to dismiss Doe 15 from the lawsuit before the March 1, 2012 deadline to complete service of all remaining defendants. *See* Court Order of November

15, 2011. Liberty intends to complete service on all defendants by this date, including Menard (unless, of course, Liberty's proposed limited discovery rules him out).

The fact that Doe 15 was not identified in the First Amended Complaint is not grounds for dismissal. Liberty filed the First Amended Complaint so the dispute with Doe 15 would not hold up service of the other 11 remaining defendants. Indeed, the First Amended Complaint specifically notes this discovery controversy and supplement with respect to Doe 15 once Liberty has obtained the discovery it seeks. Thus, there can be no argument that Liberty waived or has otherwise relinquished its claims against Doe 15.

### E. An Award of Attorney's Fees for the Present Motion Is Inappropriate

Liberty has acted in good faith on the May 11 Order to institute a procedure that it believes to be the most efficient and least invasive means of overcoming the practical difficulties of identifying the anonymous internet infringers of its copyright. It is not intended to burden or harass Menard. Indeed, quite the opposite, it is an attempt to avoid a <u>more expansive burden</u> on both Menard and Liberty that will become inevitable should Liberty's proposed limited discovery be denied. Thus, there are no grounds for the Court to award attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, Liberty respectfully requests that the Court deny the motion for a protective order, thereby allowing Liberty to serve a subpoena attached as Exhibit A.

Dated: January 30, 2012                    Respectfully submitted,

                                           LIBERTY MEDIA HOLDINGS, LLC

                                           By its attorneys,

                                           /s/Aaron Silverstein
                                           Aaron Silverstein, Esq.
                                           (BBO #660716)
                                           SAUNDERS & SILVERSTEIN LLP
                                           14 Cedar Street, Suite 224
                                           Amesbury, MA 01913
                                           P: 978-463-9100
                                           F: 978-463-9109
                                           E: asilverstein@massiplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

/s/Aaron Silverstein